Decided 10 February, 1902.

## GOHRES *v.* ILLINOIS MINING COMPANY.

[67 Pac. 666.]

MINES—EFFECT OF EXCESSIVE LOCATION.

1. An excessive location of mining ground, made through mistake and in good faith, is void only as to the excess.

MINING LOCATION—LOCATING EXCESS.

2. Where a mining location was greatly in excess of the statutory limit, and the locator, on attempting to sell the same, discovered that there was an excess, and procured a third person to locate a certain part of the original tract in his own name for the purpose of making a conveyance, such action was an assertion as to where the excess in the original location lay, so that, on its appearing that the location by such third person was void, a subsequent locator was entitled to claim that portion of the original location as excess.

ASSESSMENT OF DAMAGES BY THE COURT—STATUTES.

3. Under Hill's Ann. Laws, § 249, subds. 1 and 2, providing that, in an action sounding in tort, when the defendant has failed to answer, the court shall assess the damages (which is by Section 404 made applicable to suits in equity), it is the duty of the court to assess the damages after taking testimony, even though the defendant has answered without denying the allegation as to the amount of damages.

From Josephine: HIERO K. HANNA, Judge.

Suit by W. J. Gohres against the Illinois & Josephine Gravel Mining Company, in which plaintiff had a decree as prayed for, and defendant appeals.    MODIFIED AND AFFIRMED.

*Messrs. H. D. Norton* and *Wheaton & Kalloch* for appellant.

*Mr. Robert G. Smith* for respondent.

MR. JUSTICE WOLVERTON delivered the opinion.

Plaintiff, as a citizen of the United States, claiming to be a locator, owner, and entitled to, and in the actual possession of, a certain placer mine, triangular in form, described in the complaint is situated about one and one quarter miles above the junction of Josephine Creek and Illinois River, on what is known as "Mud Flat," adjoining Day's Gulch, in Josephine County, commencing at a monument of rock on the west bank

of Josephine Creek, three hundred yards below the mouth of Day's Gulch, running thence along said creek in a northeasterly direction fifteen hundred feet to a monument of rock; thence in a northwesterly direction six hundred feet to a monument of rock; thence in a southwesterly direction fifteen hundred feet to the place of beginning,—seeks to have his title quieted as against certain deeds through which defendant claims to have acquired title from Alex George and W. H. Little, as original locators of the *locus in quo.* It is alleged, in substance, that neither George nor Little ever properly located said mine, or acquired any interest therein, and were without right or authority to convey the same; and plaintiff seeks, also, to restrain defendant from discharging any earth, rock, gravel, or other mining debris upon said claim. Plaintiff had a decree for the relief demanded in the trial court, and the defendant appeals.

It may be taken as conceded that plaintiff's location of the claim in controversy is valid and sufficient, under the United States mining laws, to entitle him to possession, and to maintain this proceeding to restrain defendant from depositing debris from its mine thereon, provided the claim was laid upon unappropriated public lands. The defendant claims title through William H. Little, and contends (1) that Little himself acquired title and right of occupancy direct from the government; and (2) that Alex George located a claim comprising, for all practical purposes, the one in dispute, and that Little acquired title from him, and conveyed to Alex Watts, who conveyed to the defendant. To sustain the first contention, defendant produced a notice of location whereby Little claims to have located on the day of its date, October 8, 1894, fifteen hundred linear feet of placer-mining ground upon what is known as "Mud Flat," described as follows: Commencing at a stake No. 1 on Josephine Creek, running northeast to stake No. 2, seven hundred and fifty feet; from stake No. 2, running northwest to stake No. 3, six hundred feet; from stake No. 3 to stake No. 4, running southwest fifteen hundred feet; from stake No. 4 to stake No. 5 southeast six hundred feet,

from stake No. 5 ·to stake No. 1, seven hundred and fifty feet. This notice was filed in the county clerk's office for ·Josephine County, Oregon, October 10, 1894, and recorded the following day. The description, computed from the distances there given, would contain a fraction over twenty acres. However, for the exact determination of the amount of land claimed to be comprised within the boundaries designated by the notice, survey was made upon the ground, and a plat drawn and introduced in evidence. This contains a description as follows: Commencing at Watts' southeast corner (referring to a mining claim), running thence north, nine and one-half degrees west, twenty and forty-three one-hundredths chains; thence north, forty-nine degrees forty minutes east, twenty and sixty-four one-hundredths chains; thence south, twenty degrees forty-five minutes east, seven and ninety-three one-hundredths chains; thence south, four degrees thirty-five minutes west, six chains; thence south, twenty-two and one half degrees west, eleven and eighty-two one-hundredths chains; thence south forty-seven and one half degrees west, thirteen and fifty one-hundredths, to the place of beginning,—containing thirty-four and fifty one-hundredths acres. This survey includes substantially all the plaintiff's claim.

Little testifies that at the time of the location of his claim, in 1894, he established a monument at the initial point, as shown by the survey and plat, consisting of a wooden post four or five inches square and five or six feet high, and a like monument at each of the corners or points of diversion from a right line,—five in all. These monuments he describes on the plat as beginning with the initial point, as there designated, and. running in the inverse order of the survey, as one south, two south, three south, etc., up to five south, which, he seems to maintain, is the identical order of location on the ground, and designated in his notice of location. It is readily discernible, however, ·that the description in the notice of location and the one exhibited by the survey are so dissimilar that they would never be taken one for the other without a positive declaration that they were the same; and even then one is led to

doubt whether the declaration was intended to be taken seriously.  Taking the description contained in the notice of location, and Mr. Little's testimony whereby he designates the initial or starting point for setting his stakes or establishing the monuments as in the center of the line bordering upon Josephine Creek, it becomes apparent that he is mistaken when he fixes the initial monument at the extreme southwest corner of the plat, or, as otherwise designated, at Watts' southeast corner.  Aside from this, there is evidence in the record tending strongly to show that in 1897 Little claimed location for his monuments essentially different from those now designated on the plat, throwing his claim much further to the north, and quite beyond the claim of plaintiff according to positive measurement; so that, from the manner of location, and the evidence adduced touching the initial point, there remains in any event, much doubt and speculation as to where the excess of Little's location should be settled.

1. Where an excessive location has been made through mistake, while acting in good faith, as where the locator sets his stakes and estimates his distances without chain or compass, it is void only as to the excess.  This rule is of general application, except, it may be, where the excess is so large as to give rise to an inference of bad faith:  1 Lindley, Mines, § 362; *Richmond Min. Co.* v. *Rose,* 114 U. S. 576 (5 Sup. Ct. 1055); *Glacier M. S. Min. Co.* v. *Willis,* 127 U. S. 471 (8 Sup. Ct. 1214).

2. Ascribing to Mr. Little an honest intention of keeping within the statute, and acquitting him of any purpose of locating more than twenty acres, it must be noted that he frankly admits that his location was excessive by fourteen and fifty one-hundredths acres.  Indeed, the very plat made under his and defendant's direction, and which defendant offers in evidence, proves it.  He became aware in August, 1897, if not before, that his location was excessive, and that he could not convey a satisfactory title to the whole.  One Brown was trying at that time to effect a purchase of the claim, with others, and James Stith was engaged in bringing about the sale; but

in the examination thereof they discovered that it was much larger than Little was entitled to purchase from the government, and so informed him, whereupon it appears that he and plaintiff agreed that the excess should be located in Alex George's name, and, in pursuance of the agreement, plaintiff wrote out a notice of location, describing the claim, and signed George's name to it as locator, and his own as witness. Little also witnessed the document. This notice was filed and recorded at the instance of Little. Very soon afterwards,—August 7, 1897,—George executed a deed of said claim to Little. On the third of November, 1898, plaintiff perfected his location and was in possession, but it was not until the seventeenth that Little deeded to Watts. On June 26, 1899, Watts conveyed to the defendant; and two days later Little made another deed for the premises in dispute, along with his own mine, to the defendant, direct. In reality, George never made any location by erecting monuments, or otherwise designating his claim so that its exterior limits might be traced on the ground. The simple execution of the notice in the manner stated, and the recording of the same, were all that was done. Little was cognizant of all this, and accepted a deed to the George claim as though there had been a valid location, and executed two deeds to the premises, as has been indicated,—one to Watts, and the other to the defendant,—covering George's pretended claim by the description adopted in the pretended location. By these acts and representations Little has, by positive assertion, unequivocally indicated where the excess of the original location was, and has thereby precluded himself and those claiming under him from shifting it to another segment thereof. Such acts and representations were effective to render that certain and definite which was before existing much in his mind as to his primary intention, in the absence of a discovery shaft or positive designation of his initial point. His title, or that of the defendant, to the excess, therefore, is entirely dependent upon George's location; and, as he made none, he acquired no title to convey, and the defendant has acquired none.

The plaintiff would seem not to be altogether blameless in bringing about the condition, for he agreed with Little to locate the claim in George's name; but, whatever understanding or agreement he might have had at the time, it was not consummated by an actual or valid location, and he subsequently, by his positive act, renounced it.   This he did by making a location of his claim almost entirely within the supposed boundaries of George's pretended location.   Little was cognizant of this, and openly objected to it, but he subsequently recognized its validity by seeking and obtaining plaintiff's consent to mine upon the premises.   This was done through the agency of one Marston, with whom Little was working in copartnership.   The consent was obtained, however, after Little had executed his deed to Watts of the pretended George claim; but Marston and Little at that time had Watts' claim leased, and were working it, and, if Watts was claiming under the George location, it would be useless to seek and obtain the permission of plaintiff to work upon his claim.   Watts would have been the proper person to have granted the permission. The circumstance goes to show that George's location was not looked upon or treated seriously at that time.   Defendant's subsequent purchase was long after the occurrence of these incidents, and while plaintiff was in open possession, so that it must have purchased with notice of his claim, title, and right of possession.   The question, therefore, resolves itself to a strict legal right, dependent upon the better title; and plaintiff, having that, must prevail.

3. It is scarcely controverted that defendant had been for some time before the commencement of this suit discharging quantities of rock, coarse and fine gravel, and other debris upon the mine of plaintiff.   The deposit by some of the witnesses is described as covering in extent about two acres to a depth of from twelve inches to five or six feet.   Others seem to think it is much less in magnitude.   In any event, the plaintiff is entitled to an injunction restraining the defendant from further discharging debris and refuse from its mine upon his premises.   The complaint contains an allegation, in effect,

that the discharge of such debris upon his mining claim has impaired its value, and will necessitate great expense in removing the same, and greatly interferes with plaintiff's mining operations, to his damage in the sum of $500. This was practically undenied by the answer, for which reason the court below treated the amount of damages as confessed, and gave a decree for $500 therefor; being the full sum claimed. The defendant complains of the decree in this particular, and assigns error. It insists that the allegation was not issuable, and therefore that the court should have heard evidence, and determined the fact of damages therefrom, notwithstanding the allegation remained unanswered. Our statute provides that, where the defendant has failed to answer the complaint, the plaintiff shall be entitled to have judgment against him for the amount specified in the summons in an action arising upon contract for the recovery of money or damages only, but in all other actions, including those sounding in damages or tort, as opposed to an action for debt, if no answer has been filed, the clerk shall, upon written motion of the plaintiff, enter the default of defendant, and thereafter the plaintiff may apply for the relief demanded in the complaint; and in all such cases, where the judgment is rendered otherwise than on verdict in favor of the plaintiff, the court shall, without the intervention of a jury, assess the damages which he shall recover, and to this end may hear proof itself, or make an order of reference to take and report the testimony: Hill's Ann. Laws, § 249, subds. 1, 2. This is applicable as well to suits in equity: Hill's Ann. Laws, § 404. We think the scope, spirit, and purpose of this section rendered it incumbent upon the trial court to hear the testimony and proofs offered, notwithstanding there seemed to be a confession of the amount of damages alleged, and determine therefrom what amount of injury plaintiff has sustained by reason of the discharge of debris and other deposits upon his claim. We have, therefore, considered the evidence contained in the record as to such damages, and have concluded that $100 is a fair estimate.

The decree of the trial court will therefore be modified in

this respect, but in all others affirmed, and the defendant will be awarded its costs and disbursements on appeal. MODIFIED.