(May 14, 1910.)

WILLIAM F. NICHOLLS and WILLIAM GRIBBLE, Respondents, v. LEWIS & CLARK MINING COMPANY, Appellant.

[109 Pac. 846.]

MINERAL LOCATION—EXCESSIVE AREA—FRAUDULENT LOCATION.

(Syllabus by the court.)

1. Where an excessive mineral location has been made through mistake, while the locator was acting in good faith, the location will be void only as to the excess; but where the locator has purposely included within his exterior boundaries an excessive area with the fraudulent intent of holding the entire area under one location, such location is void; or if made so large that the location cannot be deemed the result of innocent error or mistake, fraud may be presumed.

2. Where the exterior boundaries of a mineral location include such an unreasonably excessive area that such boundary lines cannot be said to impart notice to a prospector of a mineral location or discovery within the reasonable distance of a lawful claim as

located under the statute, such location will be held void on the ground that the boundaries of the claim have never been marked and established as required by law.

APPEAL from the District Court of the First Judicial District, for Shoshone County.  Hon. W. W. Woods, Judge.

Action by plaintiffs in support of an adverse claim to establish the title to a certain mining claim called the "Senator." Judgment for the plaintiffs and the defendant appealed.  *Reversed.*

Gray & Knight, Wm. K. Shissler, and Therrett Towles, for Appellant.

The locations of the respondents were so excessive in size as to be void.  Where four locations as in this case are so excessive that they include within their exterior boundaries an area that is more than the law allows for nine full claims, the same are certainly void under the decisions of this court, and under the spirit and the letter of the mining law. (*Howeth v. Sullenger*, 113 Cal. 547, 45 Pac. 841; *Hauswirth v. Butcher*, 4 Mont. 299, 1 Pac. 714; *Leggatt v. Stewart*, 5 Mont. 107, 2 Pac. 320; *Burke v. McDonald*, 2 Ida. 683, 33 Pac. 49; *Stemwinder Min. Co. v. Emma etc. Min. Co.*, 2 Ida. 456, 21 Pac. 1040.)

The object of a location notice is to guide a subsequent locator and to afford him information as to the extent of a prior location.  Whatever does this fairly and reasonably should be held to be a good notice.  (*Londonderry Min. Co. v. United Gold Mines Co.*, 38 Colo. 480, 88 Pac. 457; *Kinney v. Fleming*, 6 Ariz. 263, 56 Pac. 723; *Morrison v. Regan*, 8 Ida. 291, 67 Pac. 955; *Atkins v. Hendree*, 1 Ida. 100; Lindley on Mines, sec. 362; Snyder on Mines, 397, 398.)

Kerns & Ryan, for Respondents.

"The general rule is that the location of a claim excessive in size will only be void as to the excess, if the excess is not

attributable to a fraudulent act of the locator but to an inno--
cent mistake." (27 Cyc. 561; *Howeth v. Sullenger*, 113 Cal.
547, 45 Pac. 841; *Gohres v. Illinois etc. Co.*, 40 Or. 516, 67
Pac. 666; *Richmond Min. Co. v. Rose*, 114 U. S. 579, 5 Sup.
Ct. 1055, 29 L. ed. 273; Lindley on Mines, sec. 362; *McIntosh
v. Price*, 121 Fed. 716, 58 C. C. A. 136; *Hansen v. Fletcher,*
10 Utah, 266, 37 Pac. 480; *Taylor v. Parenteau*, 23 Colo. 368,
48 Pac. 505; *Jupiter Min. Co. v. Bodie C. M. Co.* (Cal.), 11
Fed. 666; *Atkins v. Hendree*, 1 Ida. 95; *Stemwinder Min. Co.
v. Emma & Lost Chance Con. M. Co.*, 2 Ida. 456, 21 Pac.
1040.)

AILSHIE, J.—This is an adverse suit which was com-
menced by the respondents claiming to be the owners of the
Senator lode claim, with which it was alleged the Louis and
Clark lode claims conflicted. On September 4, 1905, W. Z.
Pepper, a prospector and the predecessor in interest of the
appellant corporation, discovered a vein of mineral-bearing
rock in the Hunter mining district, Shoshone county, and
thereupon posted two notices of location, one for the Louis
and the other for the Clark claim. The validity of the dis-
covery is not questioned. At the time of making the dis-
covery and posting the notices, Pepper met the respondent
Gribble, who informed him that he (Gribble) owned certain
claims which embraced the ground Pepper was about to locate.
It seems that he then stated that he owned ground embraced
in four claims in a compact body, being 3,000 feet in length
by 1,800 feet in width. These claims were named, respec-
tively, the Senator, Lost Booze, Prize and Princess. The
claim with which it is urged that Pepper's locations conflicted
was the so-called "Senator."

At the time of Pepper's discovery and location he did
not know of the existence of the Senator claim except what
Gribble told him. Gribble did not, and apparently could not,
show Pepper the stakes to the Senator claim. Pepper testi-
fies that Gribble did not point out or show him any of the
stakes or corners or the discovery on the Senator, but that,
on the contrary, Gribble told him that the stakes had either

been removed or burned down.  Gribble, however, testifies
that he pointed out the stake at the southeast corner of the
Senator and also the east center end stake.  He says: "I told
him [Pepper] where they were,—two or three of the corners.
Only one of them stakes I told him at the southeast corner
of the Senator and the center post.  I didn't know where the
others was; I couldn't find any."  After this conversation,
Pepper went to the county recorder's office at Wallace and
ascertained from the records the names and descriptions of the
claims that Gribble had located in that locality.  He found
that the location notice of the Senator described that claim as
adjoining the Lost Booze on the north and the Princess on
the east.  He also found that these various location notices
claimed ground to the extent of 600 feet in width and 1,500
feet in length for every claim.  He thereupon returned to the
ground, taking with him a 100-foot tape measure, found the
discovery cut or shaft on the Lost Booze claim, measured 900
feet north from this discovery, which allowed 300 feet for the
north half of the Lost Booze and a full width of 600 feet for
the Senator.  He there established the south line of the Lewis
claim.  He thereupon staked his claim and also located to the
east of that claim the Clark lode.  These claims as then located
and staked on the ground contained substantially the same
area and practically identical lines with the same claims as
surveyed for patent.

The evidence on the part of the appellant shows that Pepper
and his associates and those who worked for him were unable
to find any of the stakes on the Senator claim except one tree
that was squared and on which there were no markings, and
on which Pepper testified that Nicholls marked as the east
center end of the Senator subsequent to Pepper's location of
the Louis.  It is conceded by all parties that there was no
location notice posted on the Senator at the time of the Louis
location.

The testimony of the respondents, Nicholls and Gribble, and
their witnesses shows that the Lost Booze claim was located
in 1901 and the Prize, Princess and Senator were located in

1903.    The Lost Booze, the Senator and the conflict with the Louis and Clark claims are shown by the following diagram made from the surveyor's notes:

The Prize claim adjoins the Lost Booze on the west and the Princess adjoins the Prize on the north and the Senator on the west.    These two claims, however, are not involved in

this case, and only appear as two of the group of claims which the respondents were attempting to hold at the time of the location by Pepper of the Louis and Clark claims.

On about the 18th of September, 1906, the respondents employed an engineer to make a survey of these four claims. It was ascertained from that survey that the ground covered by the four locations comprised a compact area of about 4,649 feet in length by 2,075 feet in width; whereas it could lawfully have embraced in the four locations only an area of 1,200 feet in width by 3,000 feet in length. It was also shown by that survey that the Senator claim had an average width of about 1,065 feet by an average length of about 2,067 feet. In other words, this claim embraced an area equal to more than two and one-third full claims. The respondents therefore had actual knowledge from September, 1906, of the area and extent of the Senator claim as they insist that it was staked on the ground. They made no effort, however, toward drawing in their lines or making an amended location until after the appellant had applied for patent and after the respondents had filed their adverse suit. Their lines were not readjusted until March 31, 1908, on which latter date the surveyor made an amended location and they staked the ground to conform with the amended location which covers the ground in conflict in this action.

It is contended by the appellant in this case that respondents' locations of the Senator, the Lost Booze, the Prize and Princess are so excessive in area as to render the locations void. While counsel for appellant do not place their reliance in so many words on failure of the locators to properly mark the boundaries of their claims by establishing at each corner thereof and at any angle in the side lines a monument marked with the name of the claim and corner, etc., as required by the statute (sec. 3206, Rev. Codes), still the argument leads to that conclusion and results in that position. It is said in the brief that the location is a fraudulent location by reason of the excessive area embraced within the pretended external boundaries, and that this fraud is further emphasized and established by the fact that although the locators had positive

proof in September, 1906, when the survey was made, of the excessive size of the claims, still no effort was made to adjust the external boundaries or to re-establish the corners and the stakes and monuments upon the true line as required by law until after the appellant had applied for a patent and the adverse suit had been instituted.

Considerable discussion has taken place among the courts and text-writers as to the effect of a location which includes within its boundaries an area in excess of the statutory maximum. After an examination of all the authorities that have been called to our attention bearing on this subject, we are inclined to the belief that the more reasonable rule, and one eminently just and equitable, is that adopted by this court in *Burke v. McDonald,* 2 Ida. 679, 33 Pac. 49. The court there said:

"Were the boundaries of the Mammoth so large as to render the location void? Easterly of the discovery point it was marked about one hundred and fifty feet longer than the calls of the notice, and was considerably wider than allowed by law, while the westerly one thousand feet was marked substantially correct in size. Strict accuracy in the marking of claims cannot be expected or required. The character of the ground over which the locator must make his measurements must be considered; if even, with unobstructed view, greater accuracy would be required than when the surface is broken, and covered with timber. If a claim is made excessive in size with fraudulent intent, it is void. If made so large that it cannot be deemed the result of innocent error, fraud will be presumed, or if from any cause it be made so large and with such indistinct markings that its boundaries cannot be readily traced, and subsequent locators, after reasonable diligence, cannot find the same, it would be void, as against another location made in good faith. Just what excess will be tolerated, or what will vitiate, cannot be defined, but must depend somewhat upon the circumstances of each case. In Montana, it has been held a claim located 1,763 feet long is void, and the tendency there is toward strict accuracy of boundary; while in other courts it has been held that in the absence

·of fraud, the claim will be held void only as to the excess. (*Stemwinder Case,* 2 Ida. 456, 21 Pac. 1040; *Mining Co. v. Rose,* 114 U. S. 579, 5 Sup. Ct. 1055, 29 L. ed. 273; *Jupiter Min. Co. v. Bodie Consolidated Min. Co.,* 11 Fed. 675.) In this case it appears the ground is such that accuracy in measurement could not be expected; also that the Lackawanna was discovered and located mostly on the westerly end of the Mammoth, where the latter was correctly marked. It cannot be presumed, from all the circumstances of the case, the Lackawanna locators were misled by these markings, and the conclusion of the trial court is sustained.''

Substantially the same rule was suggested by the supreme court of Oregon in *Gohres v. Ill. & J. Gravel Min. Co.,* 40 Or. 516, 67 Pac. 666, wherein that court said:

''Where an excessive location has been made through mistake, while acting in good faith, as where the locator sets his stakes and estimates his distances without chain or compass, it is void only as to the excess. This rule is of general application, except, it may be, where the excess is so large as to give rise to an inference of bad faith.''

Substantially the same statement was made in *Richmond Min. Co. v. Rose,* 114 U. S. 576, 5 Sup. Ct. 1055, 29 L. ed. 273. This latter case, however, has been cited by some text-writers as supporting the contention that the location of an excessive area will never avoid the claim but will only render it voidable to the extent of the excess. The question that was being discussed by the supreme court in that case, as well as the language used by the learned justice who wrote the opinion, entirely fails to justify the assertion that this case goes to the extent claimed. The opinion in that case specifically bases the rule announced on the principle of ''good faith'' in the locator.

It is true, as contended by appellant, that it has been held by the supreme court of Montana in two cases (*Hauswirth v. Butcher,* 4 Mont. 299, 1 Pac. 714, and *Leggatt v. Stewart,* 5 Mont. 107, 2 Pac. 320), that ''The location of a mining claim must conform in all respects to the statute authorizing it and boundaries beyond the extent of the location are no

boundaries at all,'' and accordingly the court held that a claim that was staked and marked on the ground 2,000 feet in length was in fact and in law not marked and bounded on the ground at all and was therefore void. We think that rule is too strict and severe, and we would not be willing to go to that extent.

Mr. Lindley, in vol. 1, sec. 362, of his work on Mines, speaking of this subject, says:

"The courts uniformly hold that such a location, where it injures no one at the time it is made, and where it has been made in good faith, is voidable only to the extent of the excess. . . . . An excessive location cannot be said to be a fraud upon others. It cannot take away rights already acquired by prior appropriation. A location within the statutory limit cannot accomplish this. As to subsequent locators, they can measure the ground from the preliminary discovery notice, which is universally posted at, or in reasonable proximity to, the point of discovery.''

It should be remembered that it takes more than the posting of a "discovery notice" to constitute a valid location of a mining claim. (Sec. 3206, Rev. Codes, and sec. 2320, Rev. Stat. U. S.) It is just as essential that the exterior boundaries of the claim be marked by the setting of posts and the erection of monuments as it is that a discovery notice be posted. Indeed, the general rule prevails that courses and distances give way to the actual monuments and markings on the ground. It is eminently fair and reasonable and just to say that an innocent mistake has been made when the exterior boundaries of a claim are marked on the surface of the ground twenty-five, fifty or possibly one hundred feet beyond and in excess of the area to which the claimant is actually entitled under the statute, and that such posts and monuments impart notice to a prospector who is looking for vacant, unappropriated public domain on which to locate a mining claim. These monuments and markings on the surface of the ground may be further said to direct the prospector to look for the location notice and the discovery shaft or tunnel on the claim. In such case, however, he has a right to assume that he will

find the location notice and the discovery within the boundary
of a statutory claim from the point where he discovers the
monuments. If, however, the exterior monuments and bound-
aries as established by the locator, instead of being 100 feet
beyond where it should be located, be 500 feet away, what is
to be said of the notice it imparts to the prospector, or as
to whether this in fact constitutes the exterior boundary of
a valid claim that has been located in conformity with law?
But if there still be any doubt about the validity of the
claim when the exterior boundary is as remote as 500 feet
beyond what the law permits, can there be any doubt about
it when it is 5,000 feet beyond the maximum limit allowed by
law? Is the prospector in such a case to sweep the country
for a distance of 5,300 feet or 6,500 feet, as the case may be,
to find the discovery hole and the discovery or location notice
on the claim in order to measure off a statutory claim? In
such a case is it not a fact that no valid location has ever
been made for want of established monuments and posts and
the marking of the exterior boundaries of the claim? In such
case can it be said that there is any valid location? Is it not
as much a fraud on the prospector, who is looking for vacant
ground on which to locate a mining claim, to hold such an
excessive location valid and thereby exclude him from locat-
ing, as it would be to allow the prior would-be locator to ex-
clude him from any other portion of the public domain?

We are perfectly safe, we think, in saying that all the
authorities, with the possible exception of the two Montana
cases, are in accord in holding that a location in a reasonable
excess of the maximum area allowed by law, which is honestly
and innocently made, will be permitted and sanctioned by the
courts to the extent of a lawful claim. But just the point at
which the excess becomes so great as to render the attempted
location void has never been definitely enunciated by any of
the courts so far as we are able to find. And yet it is per-
fectly apparent that we must reach a limit some time, beyond
which no court would hold that there had ever been made
any valid location, by reason of the stakes and monuments
attempting to include such an excessive and enormous area of

the public domain as to amount to no markings on the ground at all and imparting no notice to the prospector, and therefore being a total failure to comply with the statute in its requirements that the locator shall ''mark the boundaries of his claim by establishing at every corner thereof, and at any angle in the side lines, a monument marked with the name of the claim and the corner or angle it represents,'' etc. The locator cannot be allowed to stake off a section or a township and hold it as one claim. This must necessarily be determined upon the facts of each case. The general character and topography of the country, the conditions and season of the year in which the location was made, the opportunity the locator has had for learning that he has made an excessive location, his facilities for measuring the claim and his subsequent conduct with reference to the area embraced in the claim, are all proper subjects of inquiry and consideration in determining the good faith of the locator of the excessive claim.

Mr. Snyder, in vol. 1, of his work on Mines, at sec. 397, in considering this question and referring to *Burke v. McDonald,* says:

''The supreme court of Idaho, on the other hand, has reached a conclusion somewhat more liberal than the Montana court, holding that if the excessive boundaries are the result of innocent error, the claim should be held valid, except as to the excess which is rejected; but if the excessive boundaries are laid with fraudulent intent, the entire claim is void. As indicated in the beginning of this section, the latter rule seems the sound one. . . . . The principal obstacle to be encountered in applying the doctrine enunciated by the Idaho court, as we view it, is that it would be a very difficult matter to ascertain in a particular case whether the excessive boundaries were laid with fraudulent intent. The court certainly could not say as matter of law that they were so laid, and if the question is considered one of fact, we hardly see just how it would be proved. And, after all, what object has the locator to attempt to include more ground in his location than is authorized by law? When he makes his location he has

the statute staring him in the face, and knows that whenever he applies for a patent to his claim he will then be restricted to the amount authorized by law. We think the Idaho court had the correct understanding of the matter, and reached the conclusion, which should have been followed in the later cases, when it said, speaking through Chief Justice McBride: 'If he claims more than the law allows, it is void for the excess. . . . . To claim more than the law allows is no fraud on others, for they have the same means of ascertaining the attempted fraud that the other has to commit it.' ''.

It will be observed that the author here calls attention to the case of *Atkins v. Hendree,* 1 Ida. 95, in which Chief Justice McBride, speaking for the territorial court, enunciated the rule from which Mr. Lindley has evidently gathered the substance of his text, to which we have heretofore adverted. We desire to say at this time that we are not in accord with the latter portion of the opinion in *Atkins v. Hendree,* which is quoted by the learned author and to which he calls specific attention. We do not think it is the duty of the prospector who finds a post or other monument erected as a part of the exterior boundary of a mining claim to sweep the country for an unreasonable distance to find a location or discovery notice. If he has any doubt about the monuments properly marking the exterior lines of the claim, it is his duty to examine within the limits and territory which the statute authorizes such a claim to include and perhaps a reasonable area contiguous thereto. But it would be a clear fraud on him to charge him with notice of the contents of a discovery or location notice at an unreasonable distance beyond the limits or confines of a claim which the monuments found or discovered could properly include.

Coming now to the facts of this specific case, we are impelled to hold that the excessive area included in the Senator and Lost Booze locations, when considered in the light of subsequent events, clearly avoids the Senator location and renders it a nullity. The locator of the Senator learned definitely and to a certainty in September, 1906, that he had included within the exterior boundaries of that location an area suffi-

cient for two whole claims and more than one-third of another claim, and yet he made no effort to readjust his boundaries,— to set new stakes and monuments, until after this adverse suit had been filed; and this, too, notwithstanding the fact that the locators of the Louis and Clark claims had been doing their work on those claims and had been developing them, and that their successor in interest had done the work which it claimed sufficient to entitle it to a United States patent for the claims. Finally, when the locators of the Senator claim came to adjust their boundaries, they did the very thing that such excessive locations would permit, and that is to swing the claim; and so they moved the claim on the east so that the southern boundary line would not touch the Lost Booze, and then swung the west end of the claim north until it was removed more than 200 feet from the north line of the Lost Booze. All the while their location notice, as it appeared of record, had advised appellant and all the world that the Senator was a contiguous and adjoining claim to the Lost Booze on the north. They also adjusted their claim so as to take everything within their original exterior boundaries on the east, and thereby threw off more than 500 feet on the west. This, of course, was perfectly proper and legitimate if it is permissible to locate a claim with so vast an area and thereafter so adjust the lines within the exterior boundaries of a large location as to take according to the calls of the notice. This amended location was swung so as to include the discovery shaft on the Louis claim. These are the very things against which the law is made to protect prospectors. It should be further observed that at the time of the location of the Louis and Clark there was no discovery or location notice posted on the Senator. Indeed, it is admitted by the locators of the Senator that the location notice had been destroyed prior to this time. Of course, the law does not require the locator of a claim to keep his notice up perpetually, but the fact that it was gone shows the difficulty, if not the impossibility, of the locators of the Lewis and Clark discovering the calls or situs of the notice, and thereby fixing the true maximum boundaries of the Senator claim on the ground.

It is also clear that if any discovery cut actually existed on the Senator, it was very indistinct. It is the duty of the locator to mark the boundaries of his claim and it is the duty of the subsequent locator to keep outside of and beyond those boundaries.

Viewed in the light of subsequent events and the evidence of bad faith furnished by the locator himself, it is clear that the Senator location is fraudulent and void and was not made in good faith. The judgment in this case should be reversed, and it is so ordered, and the cause is remanded. Costs in favor of appellant.

Sullivan, C. J., and Stewart, J., concur.

### ON PETITION FOR REHEARING.

#### (June 22, 1910.)

SULLIVAN, C. J.—A petition for a rehearing has been filed in this case. Counsel contends that there was a conflict in the evidence on certain points, in which we have reversed the trial court's findings, and also contends that this court erred in holding that if any discovery cut actually existed on the Senator claim, it was very indistinct, and that the measurements referred to should have been made from the discovery point on the Senator claim instead of the discovery on the Lost Booze claim.

After this court held that the Senator location was absolutely void because of the excessive area it contained, it mattered not what the findings of the trial court were with reference to the discovery point on the Senator claim. If the location was absolutely void because of the excess, it could not be sustained under any findings whatever with reference to the discovery, as it takes more than a discovery to make a valid location.

After a careful consideration of the case, we are clearly of the opinion that a rehearing should not be granted. A rehearing is therefore denied.

Ailshie, J., concurs.