(No. 7246. June 27, 1945.)

HAYDEN HILL CONSOLIDATED MINING COMPANY, a corporation, Plaintiff-Respondent, v. LINCOLN MINING COMPANY, a corporation, Defendant-Appellant.

[160 Pac. (2d) 468.]

Ezra R. Whitla, E. T. Knudson, Therrett T. Towles, and James E. Gyde, Jr., for appellant.

James A. Wayne, Elmer E. Johnston, and Edward M. Connelly for respondent.

432

AILSHIE, C.J.—This is an action prosecuted by the plaintiff (respondent) in support of an adverse claim for certain mining property. The case was tried to the court without a jury and the court made findings of fact and conclusions of law and entered judgment in favor of plaintiff. Defendant appealed.

The court found that Albert Schmidt, November 1, 1921, made a valid location of the Herschey lode mining claim in Evolution Mining District, Shoshone county. October 19, '27, while the Herschey was still a valid and existing claim, Schmidt entered into an agreement with the Lincoln Mining Company, appellant, under which Schmidt agreed to sell the claim and four other claims to appellant, for a consideration of $15,000. The agreement gave appellant the absolute right of possession of the mining claims, as long as it was not in default in complying with the agreement.

The Lincoln Mining Company failed to comply with its agreement to purchase and forfeited its contract with Schmidt. Schmidt died in 1930 and his estate was administered and the Herschey claim was distributed to his heirs. Through successive mesne conveyances, the title was subsequently acquired by the Strattons' Mines Consolidated, Inc., which company subsequently changed its name to the Hayden Hill Consolidated Mining Co., respondent herein. It is admitted that respondent, Hayden Hill Consolidated Mining Co., has acquired all of Schmidt's interests in the original Herschey location and the amendment thereof. December 12, '27, appellant caused the Goethe claim to be located, which covered and included more than half of the area of the Herschey claim. December 18, '27, appellant caused the Herschey location to be amended.

Th court found that appellant was acting pursuant to rights given it by the agreement with Schmidt; that the relations between the parties were of a fiduciary nature

and character; that the Goethe location and amendment of the Herschey claim were made for the benefit of Albert Schmidt, as owner of the Herschey claim; that appellant is estopped from claiming any part of the Herschey claim, either under the Goethe location or amendment of the Herschey.

The evidence shows the Herschey claim was amended at the suggestion of C. F. O. Merriam, mining engineer, to give a better description and to square up the end lines which were not parallel and, furthermore, to mark the lines that were parallel. Merriam testified at the trial that "The ideal claim, to my mind, should have both parallel side lines and end lines." As amended, the Herschey claim was 1475 feet long and 600 feet wide. Merriam first became acquainted with the claim in October, '27, when employed by appellant.

According to the testimony, it was Merriam who located the Goethe claim; he received instructions from Mr. Pfirman, secretary of appellant company, "to locate any ground that was vacant." During October, November and December, 1927, Merriam located a large number of claims south of the Purim and New Hope mining claims. In answer to the question as to what was the purpose of the location of the Goethe, Merriam said: "There were two little fractions there which were shown on this map." The fractions were separated—"one being on the far corner. . . to the southwest and the other on the far corner to the southeast of the claim". Before locating the Goethe, Merriam told Mr. Pfirman his purpose in locating these. Mr. Schmidt was with Merriam for two days; some of the location corners were pointed out by Schmidt.

The specifications of error divide themselves into two contentions, first, that the evidence is insufficient to support the findings and judgment; and, second, that "The Court erred in not finding and holding that the plaintiff was estopped to set up or claim any right to any of the land within the Goethe Claim by the alleged conflict with the amended Herschey Claim."

Appellant seems to rely, in support of his first contention, on the alleged insufficiency of Schmidt's location notice of the Herschey claim, made November 21, 1921. The boundaries of the claim are given as follows: "The ad-

joining claims are the New Hope and Purim on the south and the Chester Group of Claims on the north."

It appears that the "Chester Group of Claims" were patented in 1906 and of course the monuments of that survey are permanent monuments, in the meaning of the mining law. In this connection, however, it should be remembered that the foregoing description does not confine the *northern* boundary to the *Chester claim* but rather to the "Chester Group of Claims". It appears from the maps and plats introduced and the oral testimony, that the original Herschey location does in fact join at least one claim (the Protection) of the *Chester Group* on the north. Moreover, the evidence discloses there was no difficulty experienced in tracing out the exterior boundaries of the Herschey from the markings and stakes on the ground.

The mining engineer and geologist, Julius P. Hall, who was familiar with the section of mineral ground embraced within the Evolution Mining District, testified that he went on the Herschey claim October 7, 1925, and found all but one of the corner stakes in position ("southwest corner"), the center end line stake, discovery cut, and posted location notice, which he read and made notes of the calls in the notice. He further testified that "the original southeast corner" was marked "to the south and east" and the amended southeast corner post was "about thirty feet of the south and east." He further testified that the Herschey claim "was originally located within reasonable limits of being fifteen hundred by six hundred"; that the discovery cut was "the same cut that was used and located as the amended location". The stakes of the claim "were very well marked. In fact, exceptionally so"—"best of one hundred claim corners marked by the original locator", "plain", and "well blazed up."

The testimony of Hall is substantially supported by the testimony of the mining engineer, Merriam, who went on the ground with Schmidt in October, 1927, and found all the original corners. The original Herschey claim was "wider on the east end and a little narrower on the west end," as Merriam remembered it. This evidence was sufficient to justify the court in reaching the conclusion, that the original Herschey location and the amendment thereof were made in good faith and that the original location was

not so excessive as to bring it within the rule against locating claims in such a manner as to permit the locator to swing his location thereafter to the prejudice of a subsequent locator.

The rule is well established in this state, as elsewhere, that a location of an area in excess of that allowed by the statute is simply void as to the excess and that the inclusion of such excess of territory will not, per se, void the location; that is to say, it is only where the exterior boundaries include such an unreasonably excessive area, that its boundary lines cannot be said to impart notice to a prospector for a mining location, that the location will be held void. In other words, it is only in cases where it cannot be reasonably held, that the locator was acting in good faith when he made the location of such an excessive area, that the court will hold the entire location void. (*Nicholls v. Lewis & Clark Min. Co.*, 18 Ida. 224, 109 P. 846, 28 L.R.A., N.S., 1029; *Flynn Group Min. Co. v. Murphy*, 18 Ida. 266, 109 P. 851, 138 Am. St. 201; *Haws v. Victoria Copper Mining Co.*, 160 U.S. 303, 16 S. Ct. 282, 40 L. ed. 436.)

In *Nicholls v. Lewis, etc., Co.*, supra, the court held that

"Where the exterior boundaries of a mineral location include such an unreasonably excessive area that such boundary lines cannot be said to impart notice to a prospector of a mineral location or discovery within the reasonable distance of a lawful claim as located under the statute, such location will be held void on the ground that the boundaries of the claim have never been marked and established as required by law."

In the later case of *Flynn Group Min. Co. v. Murphy*, this court, while approving the holding in the Nicholls case, held that the location then under consideration was sufficient in its description and said:

"Where it appears that a mining claim has been located in good faith, if by any reasonable construction the language used in the location notice describing the claim and referring to natural objects and permanent monuments imparts knowledge of the location of such claim to a subsequent locator, it is sufficient."

We turn our attention now to the question of estoppel.

We are met with the finding of the court, among other things, as follows:

". . . the court finds that at the time of the location of said Goethe claim and the amendment of the location of said Herschey claim the defendant was acting pursuant to rights given to it by said agreement with Albert Schmidt, and not otherwise; that the relations between said Schmidt, and the defendant company and the officers and agents of the defendant, were of a fiduciary nature and character, and that in the location of said Goethe claim and amendment of said Herschey claim the defendant acted for said Albert Schmidt under the right given it under said agreement, and that as to any and all ground embraced within the Herschey claim as originally located, and thereafter included within the Goethe claim or the Herschey claim as amended, the defendant made or caused to be made, said Goethe location and said amendment of the Herschey claim, for the benefit of said Albert Schmidt as owner of said Herschey claim, and that said defendant is estopped from claiming any part of said Herschey claim, either under said Goethe location or said amendment of the Herschey claim."

If the court's finding and conclusion, "That said defendant (appellant) *is estopped* from claiming any part of said Herschey claim, either under said Goethe location or said amendment of the Herschey claim", is correct and supported by the evidence, then of course the court was also correct in *refusing* to find "that the *plaintiff* (*respondent*) *was estopped* to set up or claim any right to any of the land within the Goethe Claim". It therefore becomes necessary to determine whether or not the evidence justifies the holding, that defendant is estopped from setting up the claim herein contended for.

 It is undisputed that appellant entered into possession of this property under a contract of sale and purchase and, by the terms of the contract, it agreed to do all things necessary to be done to preserve the property and the title and right of possession thereto. Schmidt, the locator and vendor of the Herschey claim, was in possession at the time of the contract of sale and delivered that posession to appellant; and it necessarily follows that appellant, as vendee, not only had notice of the terms of the

contract and its obligation thereunder, but also had full notice of the facts of Schmidt's prior possession and claim of right and title to the property. Under such facts and circumstances, it would be unjust and inequitable to allow a vendee to set up or assert an adverse claim against his vendor. (*Soule v. Johnson,* 34 Ida. 439, 201 P. 834; *Michoud v. Girod,* 4 How. 503, 11 L. ed. 1076.)

■ The contract had the effect of creating the relation of trusteeship on the part of the purchaser and is binding upon the trustee under the well established rules of equity. (*Lockhart v. Rollins,* 2 Ida. 540, 21 P. 413; *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1.)

■ Furthermore, appellant, having actual notice that the prior locator, Schmidt, was in possession of the ground covered by the location notice, and was claiming it under the mineral laws, is not 'in a position to make an adverse location or acquire the property thereunder.

"In such case he has notice that the ground is claimed by another and that so much of it as is claimed and occupied is no longer public domain subject to location; and he may not question the sufficiency of the original location or the character of the original occupant's title."
(*Independence Placer Min. Co. v. Hellman,* 62 Ida. 180, 190, 109 P. (2d) 1038, 1042.)

There is a still further impediment to appellant's position, namely, Mr. Pfirman was secretary of appellant company at the time of the location of the Goethe claim and, apparently, had no intention of jumping or re-locating the Herschey claim, but he instructed the company's engineer and geologist, Mr. Merriam, "To survey all of the claims that the company owned. (appellant) . . . And to locate any fractions among them. . . and to locate any ground that was vacant."

■ It is entirely proper to lay the location of the Goethe claim over and across either patented or unpatented claims, for the purpose of covering and locating *vacant* ground, as long as such junior locator does not assert an adverse claim to the ground covered by a senior locator. Such a location is often necessary in order to acquire any extralateral rights under such junior location. (Ricketts,

American Mining Law, p. 421, sec. 741, and cases cited in footnotes; 2 Lindley on Mines, p. 843, secs. 363, 363a.)

Further discussion of the evidence would be superfluous. It is enough to add only, that the evidence is abundantly sufficient to support the findings and conclusion of the trial court.

The judgment should be, and is, hereby affirmed, with costs in favor of respondent.

Budge, Givens, Holden and Miller, JJ., concur.