## WILLIAM ATKINS ET AL. *v.* L. HENDREE ET AL.

MINING LAW—TRESPASS.—If plaintiffs performed the acts required by law to locate a quartz claim, except the labor—the year not having expired—and the defendants undertook to take possession of the ground, they were trespassers.

DEFENSE—ABANDONMENT.—Defendants in an action for the recovery of a quartz claim may show acts of abandonment on the part of plaintiffs, or that the lode which they claim is separate and distinct from the one held by plaintiffs.

MINING LAW—LOCATION.—From the time that a lawful location of a quartz claim has been made, being a space of two hundred feet in length and fifty feet on each of the stakes, the claimant becomes the owner as against any other claimant of the soil embraced in those limits.

IDEM.—The claimant is allowed to hold but one ledge by location, but the fact that other ledges may exist within those limits must first be established before a subsequent claimant has any lawful right to pass into those boundaries which otherwise must be sacred to the first location.

IDEM—INSTRUCTIONS.—The following instruction was given by the court: "No quartz claim can exceed two hundred feet in length along the lead or lode, and if the jury believe from the evidence the claim of A. was pur-

posely located to include a greater number of feet than two hundred, then the location is an attempted fraud upon the provisions of the law and the rights of others, and the location is null and void as against subsequent locators, and the jury must find for defendants:" *Held,* that this was erroneous. To claim more than the law allows is no fraud on others, for they have the same means of ascertaining the attempted fraud that the other has of committing it.

IDEM.—The fact of a separate and distinct lode must first be proved before the claimant of such lode is entitled to enter the bounds of a claim already located.

ADJOURNED into this court from the third judicial district, Owyhee county.

Ejectment for a mining claim. Plaintiffs claim to have located some time in the month of March, 1866, a quartz lode, which they denominated the "First extension south of the Dahlgren." This claim consisted of two hundred feet in length with the width allowed by law. They performed no work or labor upon this claim, except staking it off, up to the time of defendants' entry, which was about the seventh of September, 1866. Defendants located a set of claims running at nearly right angles, across the line of plaintiffs' location, under the name of the "Silver Monarch." Their discovery shaft on the point where they claimed to have discovered the lode they located, and the only point where they have performed any considerable amount of labor or pretend to have found the lode at all, was within a few feet of the line between the stakes of the plaintiffs' location, but claim that their ledge is a separate one from that claimed by the plaintiffs. Trial by jury, and verdict for defendants. Plaintiffs move to set aside the verdict and for a new trial. The hearing of this motion was adjourned into the supreme court under section 326 of the civil practice act.

*H. Martin,* for the plaintiffs:

On motion for a new trial, and in weighing testimony, if it is found that the testimony fails to establish an essential fact in question, then a new trial must be granted. (*Hawkins* v. *Reichert,* 28 Cal. 539; *Bolton* v. *Stewart,* 29 Id. 618.) Where improper evidence is admitted injury is presumed,

unless such presumption is rebutted by the record. (*Lally* v. *Wise*, 28 Id. 543; *Grimes* v. *Fall*, 15 Id. 63.)

*Stafford* and *McQuaid*, for the defendants.

McBRIDE, C. J., delivered the opinion of the Court, KELLY, J., concurring.

This is an action brought to recover a piece of mining ground containing a quartz lode, which the plaintiffs claim to have located and held under the quartz law until they were turned out of the possession and ownership by the wrongful acts of the defendants. The action is ejectment in the usual form under the code, and the issue is as to the plaintiffs' possession at the time of the alleged ouster. The defendants admit that they entered upon the premises in question, but allege that the same were vacant and open to claim and location at the time; and the acts of the plaintiffs were entirely insufficient to establish any legal right or possession to the same. On issue joined before the jury there were discussed, as appears by the record and the instructions of the court, these questions: 1. Did the plaintiffs comply with the requirements of the quartz law in the location of their claim? and if so, 2. Were the plaintiffs the owners at the time of the entry of the defendants upon the premises?

The verdict was general, and was for the defendants. Plaintiffs filed certain exceptions to the ruling of the court in its instructions to the jury, and on motion for a new trial urged those exceptions, and that the finding of the jury was in disregard of the testimony, as grounds for setting aside the verdict and ordering a new trial. The court below adjourned the case into this court for decision, and the question is upon the motion of the plaintiffs to vacate the verdict of the jury and the award of a new trial.

The principal questions involved in this case are such as arise upon the construction to be given to the quartz law.

The plaintiffs also complain of misconduct on the part of one of the jurors, but we think there is nothing which indicates corruption or willful wrong by the juror whose conduct is impeached, and that the charge, though quite natu-

7

ral at the close of a hotly contested trial where the parties felt a deep interest in the result, is not sufficient to warrant the conclusion which the appellants draw from the facts. That portion of the case we dismiss from our consideration.

The ground upon which the plaintiffs except to the instruction of the court to the jury as being upon a supposititious state of facts, we think not sustained by an examination of the record, and we will ·scrutinize the objections to those instructions on the basis of their merits as expositions of law. Whether a given instruction can have any application to the case undergoing a trial will always be more properly determined by a judge who hears all the testimony than by an appellate court which has at least but a meager outline of the evidence before it. On such questions we would require a clear case of objectionable application of the law before we would disturb a verdict. The quartz law requires, in order that a party shall have the benefit of its provisions in acquiring title to mining ground, that he shall stake off the ground, and if, as in this case, it is a single claim, there shall be a stake of a certain size driven at each end of the claim; that he shall post a notice containing certain requisites on said stakes; that within the time limited he shall have the same recorded in the proper office, and that all these acts being performed, he shall be entitled to hold the ground so designated as real estate, upon the condition that within one year he shall perform one hundred dollars' worth of labor in the development of the same.

Now, if the plaintiffs performed these acts as required by law, except the labor, and the year had not expired within which this was to be done, and the defendants undertook to take possession of the ground, they were trespassers, and the plaintiffs are entitled to their remedy to recover possession. If the defendants can show some act of abandonment on the part of the plaintiffs, of the lode which they claim is separate and distinct from the one held by the plaintiffs, then they may by such showing defeat the plaintiffs' right to recover.

And in reference to the right of a locator of a claim to his ground, we think that for the space of two hundred feet

in length and of fifty feet in width on each side of his stakes, from the time that a lawful location has been made, he becomes the owner as against any other claimant of the soil embraced within those limits. It is true that the law allows him to hold only one lode by this location, but the fact that two ledges exist within these bounds must first be established before the subsequent claimant has any lawful right to pass into them. If by going outside of these boundaries and tracing it into them he shows that another and distinct lode exists, then he may pass boundaries that would otherwise be sacred to the first locator. But until he does so he has no right to go upon the ground which the law has already given to his neighbor. What can be the use of the law which requires a party to stake out and define the bounds of his claim if those bounds are not to be respected, and are to be treated for the purpose of prospecting the same as any other vacant ground? It seems by the evidence contained in the record that if any ledge such as the Silver Monarch exists, or has been discovered, it is within the limits of the claim of the plaintiffs. The shaft of the ledge of the defendants is within a few feet of a line drawn between the plaintiffs' stakes, and no work has been done on the Silver Monarch claim outside of the boundaries of the Atkins claim on the Dahlgren. No lode was found outside and traced into those limits, but defendants enter upon the premises claimed by the plaintiffs six months after they had been attempted to be appropriated by the plaintiffs, and, discovering what they call a new ledge, insist upon their right to hold it in defiance of the plaintiffs' claim. This can not be allowed if the plaintiffs had any legal claim. If their location was lawful, and complied with the requirements of the statute, then the defendants were trespassers at the time of their entry. Hence, the question now is whether the plaintiffs complied with the law in reference to the location of quartz claims so far as to vest the right of ownership in these premises in the plaintiffs when the defendants made their entry, and did the jury disregard the law and the facts in rendering their verdict? In this connection we will observe that we think the court erred in giving the in-

struction No. 2, asked by defendants, to the jury. That instruction was as follows:

"No quartz claim can exceed two hundred feet in length along the lead or lode, and if the jury believe from the evidence that the claim of plaintiff Atkins was purposely located to include a greater number of feet than two hundred, then the location is an attempted fraud upon the provisions of the law and the rights of others, and the location is null and void as against subsequent locators of the same ground, and is liable to subsequent location, and the jury must find for defendants."

We do not assent to this view of the law. The provisions of the law require that the claimant should define the claim by stakes two hundred feet apart; that he should designate which is the beginning point in his notice, and give the direction, distance, etc. If he claims more than the law allows, it is void for the excess; but the notice does not claim all the ground between the stakes, but two hundred feet of ground running in a given direction from the place of commencement. To claim more than the law allows is no fraud on others, for they have the same means of ascertaining the attempted fraud that the other has to commit it. They can measure the ground and confine him to the limits prescribed by law, but to say that he shall lose his claim entirely because he may have included more than he can hold within his stakes by a few feet, or by ever so much, is to give protection to parties, subsequent claimants, who are not so likely to need it, as the prior locator is to be protected in his rights. If he has too much, it is easy to discover it; and all the benefit that a subsequent locator can claim is that he shall be entitled to maintain his right to the excess. We therefore proceed to inquire whether by the testimony the plaintiffs show a legal location of the ground.

Garlick was the man who made the location; and the testimony is that he was authorized by Atkins, the claimant, to locate for him; that using the south stake of the discovery claim of the Dahlgren, of which he was the discoverer, he posted the notice of the claim; that he also planted another

stake about two hundred feet south of this, on the same day, and that on this stake a notice, similar to the first, was posted, claiming the two hundred feet of said lode described in them; and that afterwards the notice was recorded, and the oath of the claimant filed with the recorder as required by law.

These are facts which the defendants seem not seriously to have attempted to contest. That the defendants were advised of the plaintiffs' claim is clear, from the fact of their offer to purchase; and that in the original location the law was substantially complied with is too clear for reasonable dispute. The pretense that Atkins forfeited his claim because he may have included more than he could hold between his stakes we have already disposed of; and unless the defendants can 'show that there was an abandonment of the claim of the plaintiff, Atkins, prior to their entry, they were clearly trespassers upon his rights. Is there anything in this testimony that justifies the assumption of abandonment? We fail to see it. The only testimony bearing on the question was that referring to the negotiations for a purchase of his claim. Whatever loose conversation Atkins may have indulged in on that occasion, the fact remains. that the defendants offered to buy, and that he declined to sell them his claim; and how this fact can be construed into an abandonment of it we do not comprehend.

We conclude, therefore, that at the time the defendants entered upon the premises they were lawfully held and owned by the plaintiffs; that the claim that the Silver Monarch is a distinct lode is one that gives the defendants no right to enter the bounds of the Atkins claim unless that fact was first established; and that the verdict in this case is in defiance of both law and the facts. Whether we suppose the jury to have found that there was no location, or that the manner of it was a fraud, or that it had been abandoned by Atkins—one or all of which they must have done to reach such a verdict—it matters not; it is unsupported and must be set aside.

We are of the opinion that a new trial should be had, and for that purpose return the case to the district court, with a mandate accordingly.