(May 23, 1910.)

FLYNN GROUP MINING CO., Appellant, v. FRANK MURPHY, Respondent.

[109 Pac. 851.]

MINING CLAIMS — LOCATION OF — APPLICATION FOR PATENT — ADVERSE CLAIM—FINDINGS OF FACT—CONFLICTING EVIDENCE—NEWLY DISCOVERED EVIDENCE — EXCESSIVE LOCATIONS — INNOCENT ERROR — FRAUDULENT INTENTION — WHEN PRESUMED — REQUIREMENTS OF STATUTE—DISCOVERY POINT—EXTENT OF VEIN ON EACH SIDE OF— DEFECTIVE NOTICE—FIVE YEARS' POSSESSION.

(Syllabus by the court.)

1. When there is a substantial conflict in the evidence upon which any finding of fact is based, such finding will not be reversed on appeal.

2. *Held*, that the court did not err in denying a new trial on the ground of newly discovered evidence.

3. A subsequent valid location of a mining claim in this state cannot be made on mineral land that is already covered by a valid location.

4. Where a discovery is made on a vein of mineral-bearing rock and the notice provides that such claim extends 700 feet in a northwesterly direction and 800 feet in a southeasterly direction from such discovery, and the corner stakes on the southeasterly end are so placed as to take in more than 800 feet of such vein, subsequent

locators may legally locate the excess of ground, as the first location is valid only to the extent of 800 feet southeasterly from the point of discovery on said claim.

5. The law requires the locator to make his location so definite and certain that from the location notice and stakes and monuments on the ground the limits and boundaries of the claim may be ascertained, and so definite and certain as to prevent the changing or floating of such claim.

6. Where the boundaries of a claim are made excessive in size with fraudulent intent, it is void; or if so large as to preclude the presumption of innocent error, fraud will be presumed.

7. Under the provisions of sec. 3207, Rev. Codes, the locator of a mining claim is required to erect a monument at the place of discovery upon which, among other things, he must place the distance claimed along the vein each way from such monument.

8. *Held,* that where a location notice states that the mining claim which it describes extends 700 feet in a northwesterly direction and 800 feet in a southeasterly direction along the lode, a locator may go to the point of discovery of such claim and measure the ground from the discovery point 800 feet in a southeasterly direction along the lode, and if there be any unlocated ground beyond that 800 feet, may legally locate it, regardless of the fact that the easterly end stakes had been established beyond the 800 feet.

9. The case of *Nicholls v. Lewis & Clark Mining Co., ante,* p. 224, 109 Pac. 846, cited and approved, and the case of *Atkins v. Hendree,* 1 Ida. 95, cited and disapproved so far as it holds that no fraud can be perpetrated where there exists the means of ascertaining or discovering the fraud.

10. Under the provisions of sec. 3207, Rev. Codes, 1909, the location notice is not required to describe the exterior boundaries of the claim.

11. Where it appears that a mining claim has been located in good faith, if by any reasonable construction the language used in the location notice describing the claim and referring to natural objects and permanent monuments imparts knowledge of the location of such claim to a subsequent locator, it is sufficient.

12. *Held,* that the locator had actual notice that the ground in controversy had been located, as well as constructive notice by an examination of the recorded notice, and that no technicalities will be resorted to to sustain his relocation of the same ground.

13. *Held,* that the finding of the court to the effect that the respondent had performed the assessment work on the Murphy Fraction for nine years and that he had worked and was in possession of said fraction for more than five years, and that during said period of time there was no adverse claim made to said premises or to any part thereof, is fully sustained by the evidence.

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. Wm. W. Woods, Judge.

An action brought in support of an adverse claim on application for a patent to a mining claim. Judgment for the defendant. *Affirmed.*

Franklin Pfirman, for Appellant.

The surface ground of a lode mining claim can only be of the length of 1,500 feet and width of 600 feet, but if the location exceeds that it is void only as to excess. (*Burke v. McDonald,* 2 Ida. 679, 33 Pac. 49, 13 Morr. Min. Rep. 325; 1 Lind. Mines, 2d ed., sec. 362; Snyder on Mines, 398; *Stemwinder Min. Co. v. Emma Min. Co.,* 2 Ida. 456, 21 Pac. 1040; *Jupiter Min. Co. v. Bodie Min. Co.,* 11 Fed. 666, 7 Saw. 96, 4 Morr. Min. Rep. 411; *English v. Johnson,* 17 Cal. 108, 76 Am. Dec. 574, 12 Morr. Min. Rep. 202; *Howeth v. Sullinger,* 113 Cal. 547, 45 Pac. 841; *Patterson v. Hitchcock,* 3 Colo. 533, 5 Morr. Min. Rep. 542; *Taylor v. Parenteau,* 23 Colo. 368, 48 Pac. 505, 18 Morr. Min. Rep. 534; *Hansen v. Fletcher,* 10 Utah, 266, 37 Pac. 480; *McPherson v. Julius,* 17 S. D. 98, 95 N. W. 435; *McElligott v. Krogh,* 151 Cal. 126, 90 Pac. 823.)

When a claim is excessive in length, the owner has the right to elect what portion he will relinquish as the excess, and cannot be required to surrender any particular portion by the location thereon of an overlapping claim by another. (*Zimmerman v. Funchion,* 161 Fed. 859; *Credo M. & S. Co. v. Highland M. & M. Co.,* 95 Fed. 911; *McIntosh v. Price,* 121 Fed. 716, 58 C. C. A. 136; *Rose v. Richmond Min. Co.,* 17 Nev. 25, 27 Pac. 1105, at page 1111; affirmed on this point expressly in *Richmond Min. Co. v. Rose,* 114 U. S. 576, 5 Sup. Ct. 1055, 29 L. ed. 273; *Gohres v. Illinois & J. Gravel M. Co.,* 40 Or. 516, 67 Pac. 666.)

The pretended location notice of the Murphy Fraction is so radically defective as to be void even under the most liberal rule.

Reasonable notice of the position of the claim is required to be shown in the location notice; such a description of the

locus of the claim that a person of ordinary intelligence would be enabled to find the claim from the directions contained in the notice, taken in connection with the boundaries of the claim on the ground. (*Bismark Mt. G. M. Co. v. North Sunbeam G. Co.*, 14 Ida. 516, 95 Pac. 14; *Morrison v. Regan*, 8 Ida. 291, 67 Pac. 955; *Ledoux v. Forester*, 94 Fed. 600; 1 Lindley, Mines, 2d ed., sec. 381.)

Gray & Knight, for Respondent.

Where a claim is excessive in area it is not void unless the excess is so great as to impress the locator with fraudulent intent. Any other locator may go to the point of discovery and measure the ground from the discovery notice and locate the excess. The location notice is required by the law as a notice to other prospectors and to the world of the extent of the locator's claim. (*Atkins v. Hendree*, 1 Ida. 100; *Stemwinder Min. Co. v. Emma Min. Co.*, 2 Ida. 462, 21 Pac. 1040; Lindley on Mines, sec. 362; Snyder on Mines, secs. 397, 398; Shamel, Mining Law, pp. 118, 119.)

There is no provision in the law requiring that the exterior boundaries of a mining claim should be described. The description of the ground located by reference to adjoining claims is sufficient. (*Morrison v. Regan*, 8 Ida. 291, 67 Pac. 955.)

SULLIVAN, C. J.—This is an action in support of an adverse claim under the provisions of U. S. Rev. Statutes, sec. 2326. It appears that in June, 1908, the respondent, Murphy, claiming to be the owner of the Murphy Fraction lode, situated in Lelande Mining District, Shoshone county, made application for a patent therefor in the United States land office at Coeur d'Alene, to which application the appellant, the Flynn Group Mining Co., which will hereafter be referred to as the mining company or the appellant, filed its adverse claim, and thereafter on October 6, 1908, commenced this action in support of said adverse claim.

The mining company's adverse claim was based on its alleged ownership of the Erin Fraction lode claim, which it is

alleged covered almost the identical ground included in the Murphy Fraction claim. The contention of the mining company is that the Murphy Fraction claim was not a valid location, for the reason that the ground included within its boundaries was at the time of its location included in other mining locations, to wit, the Snowdrift, the Buffalo and Parret Fractions.

The issues as made by the pleadings were tried by the court without a jury, and findings of fact and judgment were made and entered in favor of the respondent. Thereafter a motion for a new trial was denied, and this appeal is from the judgment and order denying the new trial.

The following, among other facts, appear from the record: On April 8, 1887, Francis Murphy, the respondent (whose name appears in the record sometimes as Francis and sometimes as Frank Murphy) and Andrew Short located the Snowdrift lode mining claim and in the location notice described said claim as "Commencing from discovery, running N. W. 700 feet, running S. E. 800 feet from discovery, bounded on N. W. by Black Bear and Cape Horn Lodes." In July, of 1899, one William P. Flynn, who owned two claims known as the Buffalo Fraction and Parret Fraction, situated in an easterly direction from the Snowdrift, had the same surveyed for a U. S. patent. It appears that the westerly end lines of those two claims were drawn in by the surveyor in an easterly direction, leaving some vacant ground between the Snowdrift on the easterly end and the Buffalo and Parret Fractions on the westerly ends; that Flynn had a number of mining claims on Flynn Mountain where said named claims were located, and informed a man by the name of Faulkner of the vacant ground and advised him that inasmuch as he had no mining ground, he had better locate it; that Flynn had lived upon that mountain for a great many years and knew the claims, their discoveries and corners; that he and Faulkner went to the discovery on the Snowdrift claim and measured off in a southeasterly direction 800 feet for the purpose of ascertaining how far in a southeasterly direction the Snowdrift ground extended. They

thereupon made a discovery on said vacant ground and located the same by staking the ground and extending the stakes outside of the limits of the vacant ground in order that they might be sure to take in all of the ground there vacant. Said claim was located in the name of Frank Murphy as the Murphy Fraction and the location notice was filed for record on August 26, 1899. It appears that during each subsequent year Murphy has performed the assessment work and has constructed two tunnels upon that ground; that in June, 1906, Joseph F. Whelan, who was the secretary and general manager in full charge of said company's affairs, knew of the Murphy Fraction claim and the ground included within its boundaries, and knew that it was claimed by the respondent, and knew that Murphy had constructed two tunnels on said fraction; but on an examination by Whelan of the recorded location notice of the Murphy Fraction, he concluded that said notice was not sufficient, and proceeded to locate said ground by the Erin Fraction claim on behalf of said mining company. Murphy having ascertained that the original location notice of the Murphy Fraction was defective, made an amended location of said claim on November 13, 1906, and thereafter made application for a U. S. patent for said claim, and the mining company's adverse claim is based upon said Erin Fraction location.

The Erin Fraction lode was located long after the Murphy Fraction lode, and the title of the appellant to the ground in controversy depends upon the invalidity of the Murphy Fraction location. Appellant largely rests its case on the fact that the Murphy Fraction was an invalid location, for the reason that it was located on premises included within the Snowdrift claim. The Snowdrift claim was located in 1887; the Murphy Fraction on the 26th of August, 1899; the Erin Fraction on the 6th of June, 1906. Appellant contends that the Snowdrift claim was staked upon the ground and included within its exterior boundaries the discovery of the Murphy Fraction lode, and that said Murphy Fraction lode was therefore a void location. There was a conflict in the evidence upon this point, and the court expressly found that the dis—

covery of the Murphy Fraction lode was not made within the exterior boundaries of the Snowdrift claim, but was made at a point easterly from the southeasterly end line of said claim.

There was some controversy over the exact location of the original northeast corner of the Snowdrift claim. There is a direct conflict in the testimony upon that question, and the trial court in its seventh finding of fact, among other things, found as follows: "That the northeast corner stake on the said Snowdrift claim was placed at a point from five to eight feet in a northeasterly direction from the present patent corner on the Snowdrift lode claim which is located at the same place as the northwest patent corner of the Murphy Fraction lode claim." The court having thus found upon conflicting evidence the location of that corner stake, this court upon all of the evidence on that point is not inclined to reverse that finding. However, on the motion for a new trial the appellant introduced the field-notes, plats and survey of the Buffalo and Parret Fraction lodes and the affidavit of Mr. Pfirman, which, it is contended, clearly establishes the fact that the court made an error in said finding and that said plat and field-notes show that Mr. Flynn testified falsely on the trial when he testified that said northeast corner of the Snowdrift lode was within five or eight feet of the corresponding corner as patented.

In opposition to said affidavit, the respondent filed the affidavit of Arthur A. Booth, deputy mineral surveyor, who surveyed said Buffalo and Parret Fractions for a patent in the month of July, 1899. From that affidavit it appears that said fractions were staked for patent and the patent corners established and the westerly end lines of the said claims were drawn in in an easterly direction, and that a large portion of the land now included in the Murphy Fraction lode was originally within the exterior boundaries of the Buffalo and Parrett Fraction lodes, and upon establishing the patent corners of said fractions, the land now included within the Murphy Fraction lode, or a large portion thereof, was left outside of said fraction lodes as established upon the ground by that survey; that in the patent plat of the survey for said

fractions and in the field-notes he reported the Snowdrift lode unsurveyed as lying west of the Buffalo and Parret Fraction lodes and so marked upon the patent plat; that he did so purely from hearsay, and he did not at that time survey to any of the corners of the Snowdrift lode and that he did not intend and did not show, either by his plat or field-notes, that the northeast corner of the Snowdrift was identical with corner No. 2 of the Buffalo Fraction lode; but referring specifically to his field-notes, he did report that corner No. 2 of the Buffalo Fraction lode was identical with corner No. 2 of the Josephine lode and corner No. 9 of the Exchequer, and that said field-notes and survey did not show, and did not pretend to show, any of the corners of the Snowdrift lode; that he simply marked the name of the Snowdrift lode unsurveyed on said plat, which he was told was situated in a westerly direction.

We have carefully considered the plats and affidavits used on motion for a new trial and are satisfied that the court came to the right conclusion in regard to the location of the northeast corner of said Snowdrift lode claim, and did not err in denying a new trial on the ground of newly discovered evidence.

It appears from the evidence of the locators of the Murphy Fraction lode that when they went to locate it they went to the discovery shaft or point on the Snowdrift lode and measured off in a southeasterly direction 800 feet from that point, that being the length upon the lode in that direction called for by the location notice, and then located the Murphy Fraction easterly of and adjoining said Snowdrift location. But it is contended by appellant that the easterly end line of said Snowdrift claim as marked upon the ground extended more than 800 feet easterly from said point of discovery, and for that reason was included in said claim and was not open to location at the time of the location of said Murphy Fraction lode; that if said Snowdrift location included more ground than the locators were entitled to, the ground included within the stakes had been segregated from the public domain and

was not subject to location until the locators adjusted the exterior lines thereof and excluded therefrom any surplus ground contained therein, and cites in support of that contention, *Belk v. Meagher,* 104 U. S. 279, 26 L. ed. 735, and quotes the following from said decision:

"Locations can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. Hence a relocation on lands actually covered at the time by another valid and subsisting location is void; and this not only against the prior locator, but all the world, because the law allows no such thing to be done."

We fully recognize the rule laid down by the supreme court of the United States in that decision, but we do not think that rule applies to the facts of this case. The location notice of the Snowdrift claim provides that the lode claim extends from the point of discovery 700 feet in a northwesterly direction and 800 feet in a southeasterly direction. If the parties who located it in fact placed their stakes at the northeasterly and southeasterly corners of said claims so as to take in more ground than called for in the notice, such excess was not and could not be legally included in that location. It is not left to the pleasure of the locator to adjust his boundaries when and where he likes within an excessive location when it will interfere with a subsequent locator.

Counsel for appellant contends that a locator may cover or include within his location an excessive area of ground and hold it against the world until he gets ready to conform it to the area allowed by the mining laws or until he has the same surveyed for a patent. We recognize the rule that where a claim is excessive in area, the location is not void unless the excess is so great as to impress the locator with a fraudulent intent. The intent of the law is to require the locator to make his location so definite and certain that from the location notice and the stakes and monuments on the ground the limits and boundaries of the claim may be readily ascertained, and so definite and certain as to prevent the changing or floating of the claim. This court held in *Burke v. McDonald,* 2 Ida. 679, 33 Pac. 49, 17 Morr. Min. Rep. 325,

that where the boundary of a claim is made excessive in size with fraudulent intent, it is void; or if so large as to preclude innocent error, fraud will be presumed. (*Stemwinder Min. Co. v. Emma & L. C. Con. Co.*, 2 Ida. 456, 21 Pac. 1040.)

Among other things, it is provided in sec. 3207 of the Rev. Codes of 1909, as follows:

"The locator at the time of making the discovery of such vein or lode must erect a monument at such place of discovery, upon which he must place his name, the name of the claim, the date of discovery and distance claimed along the vein each way from such monument. Within ten days from the date of discovery, he must mark the boundaries of his claim by establishing at each corner thereof and at any angle in the side lines, a monument, marked with the name of the claim and the corner or angle it represents; also at the time of so marking his boundaries, he must post at his discovery monument his notice of location in which must be stated: First, the name of the locator; second, the name of the claim; third, the date of discovery; fourth, the direction and distance claimed along the ledge from the discovery; fifth, the distance claimed on each side of the middle of the ledge; sixth, the distance and direction from the discovery monument to such natural object or permanent monument, if any such there be, as will fix and describe in the notice itself the location of the claim; and seventh, the name of the mining district, county and state."

The provisions of said section require a monument of some kind to be erected at the point of discovery, which point is supposed to be on the ledge, and require the locator to place on such monument "the distance claimed along the vein each way from said monument," and also require the location notice to state the direction and distance claimed along the ledge from the discovery. In the location notice of said Snowdrift lode it is stated that said claim extends in a northwesterly direction along the lode 700 feet, and in a southeasterly direction along the lode 800 feet. That notice fixes the distance along the lode that said claim extends from the point of discovery. The ground beyond the 800 feet south-

easterly from the discovery was not included in said claim, even though the stakes marking the northeasterly and south-easterly corners of said claim were placed beyond the 800 feet. Any locator had a right to go to the point of discovery of the Snowdrift claim and measure the ground from the discovery point 800 feet in a southeasterly direction along the lode, and if there was any unlocated ground beyond the 800 feet, locate it, regardless of the fact that the easterly end stakes had been established beyond the 800 feet.

In *Nicholls et al. v. Lewis & Clark Mining Co., ante,* p. 224, 109 Pac. 846, just decided by this court, the court had occasion to review and disapprove of certain language used by Chief Justice McBride in *Atkins v. Hendree,* 1 Ida. 95, to wit: "To claim more than the law allows is no fraud on others, for they have the same means of ascertaining the attempted fraud that the other has to commit it," and held that where an excessive mineral location has been made through mistake, while the locator was acting in good faith, the location will be void only as to the excess; but where the locator has purposely included within his exterior boundaries an excessive area with fraudulent intent to hold the entire area under one location, such location is void. Or if made so large that the location cannot be deemed the result of innocent error or mistake, fraud may be presumed. Chief Justice McBride virtually holds in the case of *Atkins v. Hendree, supra,* that no fraud can be perpetrated where there exists the same means of ascertaining or discovering the fraud that the other parties had to commit it. We cannot assent to that doctrine, for, as we view it, a fraudulent act still remains fraudulent even though there exists very plain and simple means of ascertaining or discovering the fraud. Where a claim is located in good faith and contains some excess of ground, the location is valid except as to the excess, and others who may desire to make a location may measure the ground and confine the first locator to the limits prescribed by law. This court therefore holds that a subsequent locator may measure the ground of a prior location from the discovery and ascertain the extent of such location, and if it contains

more ground within its boundaries than is described in the location notice, and more land than can be located under one location, the subsequent locator may locate the excess and maintain his right thereto. This rule applies to locations not fraudulent on account of containing an unreasonable excess of ground, and it has no application to fraudulent locations such as in the case of *Nicholls v. Lewis & Clark Mining Co.,* for if the location is absolutely void, the ground included therein has not been segregated thereby from the public domain. There is no contention made in the case at bar that the excess in the Snowdrift location, if there was any, was the result of fraudulent intent, but we think it is conceded that such excess, if there was any, was the result of innocent error.

It is contended that the location notice of the Murphy Fraction is so defective as to impart no notice whatever. It must be admitted that it does not describe the exterior boundaries of said mining claim. It does, however, contain the seven requisites of a location notice as provided by said sec. 3207, Rev. Codes. It contains (1) the name of the locator; (2) the name of the claim; (3) the date of the discovery; (4) the distance along the ledge from the discovery; (5) the distance claimed on each side of the ledge; (6) such a description as will fix and describe the location of the claim; (7) the name of the mining district, county and state. The locator attempted to describe the exterior boundaries of the claim and utterly failed to do so. The law, however, does not require the notice to describe the exterior boundaries of the claim. It is recited in the notice that the adjoining claims are the Snowdrift on the west and the Buffalo Fraction and the Parret Fraction on the east, and the evidence shows that those claims were well-known claims at the time of the location of the Murphy Fraction.

This court held in *Morrison v. Regan,* 8 Ida. 291, 67 Pac. 955, that where it appears a mining claim has been located in good faith, if by any reasonable construction the language used in the notice describing the claim and in reference to natural objects and permanent monuments will impart knowledge of the location of the claim to a subsequent locator, it is

sufficient. It has frequently been held that reference to well-known mining claims is a sufficient compliance with the law (sec. 2324, Rev. Stat. of the U. S., and sec. 3207, Rev. Codes, 1909) requiring mining locations to be tied to some natural object or permanent monument so as to identify the claim. (*Hammer v. Milling Co.*, 130 U. S. 291, 9 Sup. Ct. 548, 32 L. ed. 964; *Duncan v. Fulton*, 15 Colo. App. 140, 61 Pac. 244; *Kinney v. Fleming*, 6 Ariz. 263, 56 Pac. 723.)

In *Hammer v. Milling Co.*, supra, the location notice stated as follows: "This lode located about 1,500 feet south of Vaughan's Little Jenny mine." The supreme court of Montana held that that was a sufficient reference to a natural object or permanent monument, and the supreme court of the United States, sustaining that decision, said: "We agree with the court below that the Little Jenny mine will be presumed to be a well-known object or permanent monument until the contrary appears."

In *Bismark Mining Co. v. North Sunbeam Co.*, 14 Ida. 516, 95 Pac. 14, this court stated as follows: "It is the well-settled doctrine of all of the later decisions that location notices and records should receive a liberal construction, to the end of upholding a location made in good faith"; and quotes from the case of *Londonderry M. Co. v. United G. M. Co.*, 38 Colo. 480, 88 Pac. 455, as follows:

"Every case where this question is raised must therefore depend upon its own circumstances. As previously stated, the purpose of such location certificate is to give notice to subsequent locators; and if by reasonable construction the language descriptive of the situs of a claim, aided or unaided by testimony *aliunde*, will do so, it is sufficient in this respect. In other words, the object of requiring a reference to a natural object or permanent monument is to furnish means by which to identify the claim, and whatever reference will accomplish this object satisfies the law."

It appears from the evidence that said Murphy Fraction was staked, and with the exception of one stake, they remained standing up to the time the survey was made for patent. It seems that one of the stakes had fallen down and was not up

during the year prior to its survey for a patent. After reciting certain facts in *Bismark Mining Co. v. North Sunbeam Co., supra,* this court said:

"Those facts appearing, every reasonable presumption that can be drawn therefrom should be in favor of his knowing of said locations; and his grantees should not be permitted to take advantage of any minor defects in the location notices of said mining claims. If Oster had actual notice of the location and boundaries of said claims, neither he nor his grantees will be permitted to take advantage of some technical defect in the location notice, where it appears that said claims were located in good faith."

We think the notice in this case is sufficient under the facts of the case, as it clearly appears that Whelan, who located the Erin Fraction claim for appellant, had full knowledge of the location of the Murphy Fraction claim, and one of the principal reasons that he gives for locating it is that on an examination of the location notice he concluded it was defective. Whelan had actual notice that the ground had been located, also constructive notice by an examination of the recorded notice, and had seen the work done by Murphy on the claim for six or seven years. It is true that Whelan also claimed that the ground was not subject to location at the time Murphy located it as the Murphy Fraction, for the reason that the ground was covered by other locations, but the trial court found against this contention. Whelan testified that after examining the notice, he concluded it was not sufficient.

The court found that the respondent had performed the assessment work on the Murphy Fraction claim for nine years beginning with 1900 and ending with 1908, and that respondent had held, worked and was in the possession of the Murphy Fraction lode for more than five years from and after the 26th of August, 1899, the date of its location, and that during said period of time, and for more than five years after the date of said location, there was no adverse claim made to said premises or to any part thereof, and that such possession was open, notorious, exclusive and continuous for more than six years. We think that finding is supported by the evidence.

Under the facts and circumstances of this case, to permit the appellant to recover on purely technical grounds would be doing a great injustice to the respondent.

Counsel for appellant contends that the evidence is not sufficient to support the findings to the effect that respondent has been in open, notorious and adverse possession of said claim for a period of more than six years. On an examination of the evidence, we are fully satisfied that that finding is amply supported by the evidence.

The argument contained in appellant's brief is predicated upon four propositions: (1) That the Murphy Fraction lode was located within the lines of the Snowdrift lode; (2) that the notice of location filed for record was void; (3) that there was no adverse possession of said Murphy lode; (4) that after the abandonment of the easterly portion of the Snowdrift location, the Erin Fraction was located so as to cover such abandoned portion, and was therefore a valid location. All of the assignments of error are practically included within those contentions, and the trial court found in favor of respondent on each and every one of them, and such findings are based on a substantial conflict in the evidence.

Upon a careful review of the whole record, we are fully satisfied that the findings of fact are supported by the evidence and that the judgment must be affirmed, and it is so ordered. Costs are awarded to the respondent.

Stewart and Ailshie, JJ., concur.

### ON PETITION FOR REHEARING.

#### (June 22, 1910.)

SULLIVAN, C. J.—A petition for rehearing has been filed in this matter, whereby it is contended that the rule laid down in this case is in conflict with the rule laid down in the case of *Nicholls v. Lewis & Clark Min. Co., ante,* p. 224, 109 Pac. 846, decided at this term.

After a careful examination of both opinions, we are unable to find any conflict between the rules laid down therein.

Counsel for appellant also contends that the rule laid down in subdivisions 4, 7 and 8 of the syllabus is not the rule that should obtain in this state, and if it is the established rule, it will lead to many conflicts and disturbances among mineral claimants, and that it would be unjust to require a locator of a mining claim, when informed by another mineral claimant that his claim is excessive, to then and there relinquish the excess; that such a rule would be unfair to the excessive claimant. Counsel thus contends, in effect, that it should be left to the discretion of the one who claims an excessive area of surface ground in his mining claim when he should relin-- quish the excess.

We cannot agree with that contention. Under the law, a locator should not be permitted to hold an excess of ground with a single location, and when his notice provides that his mining claim extends a certain number of feet in a certain direction from the discovery, subsequent locators may be governed by the statement in the notice and not by stakes that include within their boundary an excess of surface ground. We are not inclined to depart from the rule laid down in the opinion in this case.

Our attention has been called to the fact that the Snow-- drift claim was located under the provisions of secs. 3101 and 3102, Rev. Statutes, instead of under the provisions of sec. 3207, Rev. Codes, and under the provisions of said sec. 3101, the notice of location was required to be conspicuously attached to one of the center end stakes instead of being posted at the place of discovery; but that would make no difference so far as the rule laid down in this opinion goes. It was, in fact, posted at the discovery and not on the center end stake, and recited that the claim extended 700 feet in a northwesterly direction from the notice and discovery, and 800 feet in a southeasterly direction therefrom, and under that notice he was only entitled to 800 feet in a southeasterly direction from the discovery point.

Some question is raised in regard to newly discovered evidence and the admission of counter-affidavits. The newly discovered evidence consisted of field-notes, plat and surveys.

of the Buffalo and Parret Fraction lodes. Upon an examination of those, we are fully satisfied that the decision of this court would not have been different from what it now is had that evidence been introduced on the trial. We do not think, as contended by counsel, that this newly discovered evidence, had it been introduced on the trial, would have entitled appellant to recover in this action.

No sufficient reason appearing why a rehearing should be granted, the application is denied.

Ailshie, J., concurs.