(March 11, 1889.)

## LOCKHART ET AL. v. ROLLINS.

[21 Pac. 413.]

EXCEPTIONS—STIPULATION EXTENDING TIME—WAIVER.—When exceptions to evidence are taken during the trial, but such exceptions are not settled until two months after the trial, and more than a month after filing decision the appellant then having prepared a case embodying a bill of exceptions, in which bill the exceptions taken during the trial are included, and the case containing such bills allowed, and settled without objection in the presence of the attorneys for the respective parties, *held*, that such exceptions are not waived; *held*, also, that by the failure to object at the settlement the party is deemed to have agreed to the extension of time under section 2426 of the Revised Statutes of Idaho.

LOCAL CUSTOM OF MINERS AS TO TRANSFERS.—Evidence of local customs of miners, as to the manner of transfers of interests in mining claims, previous to July 26, 1866, is admissible.

VERBAL TRANSFERS—CHANGE OF POSSESSION.—Verbal transfers, if followed by change of possession, are valid as transferring claimant's interest.

LABOR OF WATCHMAN—WORK DONE ON MINE.—Where mining works are idle, time and labor of a watchman and custodian on the property in taking care of it is labor done on the claim.

RELOCATION—OWNERS' RIGHTS.—A party cannot make a valid relocation of lands legally possessed by another, until the owners' rights have been abandoned, forfeited or otherwise ended.

AGENT OF NONRESIDENT OWNERS.—The undertaking by one on the ground to procure a purchaser for a mining claim, the owner being nonresident of the territory and having no other agents in the territory to look after the claim, constitutes a fiduciary relation of such persons in relation to such property.

AGENT RELOCATING FOR HIMSELF.—A person sustaining such fiduciary relation in respect to a mining claim cannot defeat the rights of his principal by relocating it for himself.

SAME.—If he so do relocate it, and benefit accrue from such act, the benefit accrues to the owner, and not to the relocator.

(Syllabus by the court.)

APPEAL from District Court, Alturas County.

This action is for the recovery of possession of a certain mining claim situate on Bear creek, Alturas county, Idaho, known as the "Ada Elmore Lode and Mining Claim." The complaint alleges that the plaintiffs have a "legal right to occupy and possess" the claim by virtue of compliance with all the requirements of law and rules of miners, and of actual prior occupancy of it as a mining claim; also that the defendant, on the fourth day of January, 1886, while in the employ of the plaintiffs as their agent, and as such agent in the actual occupancy of said property, made a relocation of the property adverse to the rights of the plaintiffs, intending the same to be for his benefit; that the defendant ever since such act wrongfully withheld possession from the plaintiffs, to their damage, etc.; and prays judgment for the possession of the premises, with damages for detention; and closes with a general prayer for relief. The answer is a general denial, but avers, among other things, that "the said alleged original locations on said Ada Elmore lode" consisted of several mining claims located thereon, by the discoverers thereof, in 1863, extending twelve hundred feet in length, along said lode, and no more, "with a width of one hundred feet; that prior to the nineteenth day of June, 1878, said Pittsburgh and Idaho Gold Mining Company had or claimed an interest in, or right of possession of, seven hundred feet undivided of said twelve hundred feet of said premises; that on that day the plaintiff, Charles Lockhart, as assignee of one Newton, a judgment creditor of said company, and purchaser of said interest of said company, under a sheriff's sale thereof, succeeded, by sheriff's deed, to whatever interest," etc., said company had in said premises; that thereafter, and until the defendant's discharge, in August, 1885, the defendant acted as agent for said Lockhart, in the care and supervision of said

mining claim and business, and improvements connected therewith; that in 1883 the plaintiff Lockhart contracted with defendant to pay defendant for his services as such agent $500 a year, beginning January 1, 1883, in consideration of which the defendant "agreed to take and keep the care and supervision of said property, business, and improvements; prevent waste thereon; preserve the possession thereof; attend to the payment. of taxes and hire of laborers to perform the requisite annual labor, to be paid out of funds to be furnished by the said Lockhart." Alleges performance of such duties until his discharge, in August, 1885. Alleges payment of such salary for 1883 and 1884, and claims such salary as unpaid for 1885, up to July 31st of that year; and alleges that the assessment work for 1885 was not done, whereby, and "by force of the law," the claim "became forfeited and relegated to the body of public mineral lands"; and on the fourth day of January, 1886, he "located a claim as the 'Ada Elmore,' including said premises, of twelve hundred feet long, and one hundred feet wide, enlarging the location to fifteen hundred feet in length by six hundred feet in width; claiming such relocation for his benefit; and closing with prayer for judgment against said plaintiffs for the right of possession of his said Ada Elmore lode, and for costs, and that the judgment "be certified to the register of the land office," etc. The case was tried by the court without a jury, at the October term, 1887. Findings were filed December 10, 1887, and judgment for plaintiffs on such findings of fact and law was entered on that day. The findings and judgment affirm the right of the plaintiffs to all the lands described in the defendant's location. of January 4, 1886. This part of the judgment is based mainly on the following findings of fact and conclusions of law: "The court finds as a fact that on the fourth day of January, 1886, a fiduciary relation existed between the plaintiffs and defendant, by reason of the employment of the defendant to procure for the plaintiffs a purchaser for the property included in the defendant's location of January 4, 1886, for a percentage of the proceeds of such sale as his commission," and as conclusion of law that the defendant, sustaining such fiduciary relation in respect to this property, acquired no

rights by his relocation—the lands so affected by this finding extending beyond the original claim in length two hundred and fifty feet, and on each side two hundred and fifty feet, the point of location at which defendant placed his notice being at the point of plaintiffs' shaft in the Ada Elmore lode claim. As to whether this finding of fact is sustained by the evidence, it was further found that, during the year 1885, the annual labor required by law (U. S. Rev. Stats., sec. 2324) was performed by plaintiffs on said Ada Elmore lode claim by caring for and maintaining the buildings and improvements thereon; and hence that the claim was not on the fourth day of January, 1886, subject to relocation. We shall consider these findings hereafter.

J. B. Rosborough, for Appellant.

It was error to admit oral testimony to show the location of a mining claim and transfers of interest therein, contrary to the statute of frauds. (*Hopkins v. Noyes,* 4 Mont. 550, 2 Pac. 280.) The admission of sheriff's deed, without showing a valid judgment as a predicate, was error. (Freeman on Judgments, sec. 350; *People v. Doe,* 31 Cal. 220, 221; *Lanning v. London,* 4 Wash. C. C. 513, Fed. Cas. No. 8076.) In proceedings to determine adverse claims to locations of mineral lands, it is incumbent upon the plaintiff to show a location which entitles him to possession against the United States, as well as against the other claimant. (*Gwillim v. Donnellan,* 115 U. S. 45, 5 Sup. Ct. Rep. 1110.) A valid location of a claim is not made by taking possession alone; and merely working mineral land gives no right of possession against a locator who complies with the regulations prescribed by law. (*Horswell v. Ruiz,* 67 Cal. 111, 7 Pac. 197.) The right of possession is acquired only by such compliance. (*Belk v. Meagher,* 104 U. S. 279; *Hopkins v. Noyes,* 4 Mont. 550, 2 Pac. 280.) Expenses of money and time in traveling about matters connected with a mining claim are in no sense labor performed on the claim. (*Du Pratt v. James,* 65 Cal. 555, 4 Pac. 562; *Russell v. Brosseau,* 65 Cal. 605, 4 Pac. 543.) A relocation on lands actually covered at the time by another valid and subsisting location is void; and this, not only

against the prior locator, but all the world, because the law allows no such thing to be done. (*Belk v. Meagher,* 104 U. S. 284; *Garthe v. Hart,* 73 Cal. 541, 15 Pac. 93.)

Lyttleton Price and Richard Z. Johnson, for Respondents.

Mining locations and transfers of mining property prior to 1866 may be proved by parol. Conveyances of claims prior to 1866 may be made by parol. (*Kinney v. Mining Co.,* 4 Saw. 382, Fed. Cas. No. 7827; *Mining Co. v. Taylor,* 100 U. S. 37.) Color of title, even under a void and worthless deed, has always been received in evidence that the person in possession claims for himself, and, of course, adversely to all the world. (*Pillow v. Roberts,* 13 How. 477; *Kennebec Purchase v. Laboree,* 2 Me. 275, 11 Am. Dec. 79.) A location may be made by an agent. (*Schultz v. Keeler,* ante, p. 333, 13 Pac. 481; *Gore v. McBrayer,* 18 Cal. 582-588; *Morton v. Mining Co.,* 26 Cal. 534; *Murley v. Ennis,* 2 Colo. 300; *Thompson v. Spray,* 72 Cal. 528, 14 Pac. 182.) A trustee or agent cannot deal with the subject of the trust or agency for himself. Equity will declare any act of the agent to be for the benefit of his principal. (Ewell's Evans on Agency, 255; Story on Agency, 210; Cooley on Torts, 526; *Gardner v. Ogden,* 22 N. Y. 327, 78 Am. Dec. 192, and note; *Ringo v. Binns,* 10 Pet. 269; *Bain v. Brown,* 56 N. Y. 285; *McMahon v. McGraw,* 26 Wis. 614; *Michoud v. Girod,* 4 How. 504; *Edmonstone v. Hartshorn,* 19 N. Y. 9.)

BERRY, J. (After Stating the Facts.)—A question of practice and of evidence is presented at the beginning of the consideration of this case. It appears that the findings of the court below were filed December 10, 1887, and judgment for the respondents was entered on that day; that a case was soon thereafter prepared, including assignments of error, presented for settlement, and settled and allowed, on the twenty-eighth day of January, 1888. The certificate of the judge states that such case, with assignments of error included, were "examined, settled and allowed in the presence of the attorneys of the respective parties." Both parties participated in the settlement, without objection. The respondents now claim

that many of the alleged errors, if errors at all, were committed in the course of the trial, and the exceptions under the Revised Statutes, section 426, should have been settled at the time the decision was made, and, not having been settled for nearly two months after the trial, must be deemed as waived. The statute declares that such "exceptions must be taken and settled at the time the decision is made, and no order of the court shall be made for the settlement of such exceptions at any other time, except by the agreement of both parties." The action of the court in actually settling these exceptions on the 28th of January is equivalent to an extension of the time to that day. Both parties were present at such act, and took part in the proceedings, apparently without objection. Such tacit consent is equivalent to an "agreement of both parties." The settlement of the exceptions was therefore regular. The next question raised is as to the admissibility of the evidence of the local customs of miners in transferring interests or rights of possession in mining claims prior to July 26, 1866. The original locators of the Ada Elmore lode mining claim were six in number, and the witness Sawyer was one of them. In showing a transfer of the several interests of some of the several locators to the plaintiffs the witness Sawyer was asked: "Q. What were the customs as to the transfer of mining property in that district from 1863 to 1866, till the passage of the law of Congress that year? (Objection was made by appellant to the question and to proof of custom as irrelevant; that the evidence of such transfers should be in writing. The objection was overruled, and the witness answered.) A. I know the custom. It was by bill of sale or word of mouth. Either was good from 1863 to 1866 to a friend. To those unknown it was otherwise. We had no lawyers to write deeds. When a sale was made to a friend, he would just step into possession."

It was not error to allow this evidence. The act of Congress of July 26, 1866, clearly indicates that the rights of mining claimants may be subject "to the local customs or rules of miners"; they not being in conflict with the laws of the United States. It even allows those laws, customs and rules of miners in establishing the right of a claimant to enter and re-

ceive a patent to a mining claim. (*Tunnel Co. v. Stranahan,* 20 Cal. 199; *Mining Co. v. Taylor,* 100 U. S. 37.) The new location of the plaintiffs' claim is admitted in the answer; that prior to June 19, 1878, the Pittsburgh and Idaho Mining Company, one of the plaintiffs, had or claimed an interest of seven hundred feet of the twelve hundred feet of the Ada Elmore claim, and that the plaintiff Lockhart became the owner of it through a sheriff's deed, in an action against this company. Conveyances to said company were shown, covering the balance of said claim; also that plaintiffs had been in peaceful and exclusive possession of the claim, with claim of right, working or improving it, for nearly twenty years. There was other evidence tending to show that the plaintiffs were rightfully in possession of this property. On this point their claim of rightful possession was fully established. The finding of the court below on this point must be sustained.

But it is contended that the labor required by law was not performed in 1885, and that for that reason the claim in question was, at the beginning of 1886, open to relocation adversely to plaintiffs. By section 2324 of the United States Revised Statutes the holder of a mining claim, to maintain his right of possession, must see that "one hundred dollars' worth of labor shall be performed on such claim, or in improvements made thereon, during each year." The object of this requirement seems to be that the holder of a mining claim shall give substantial guaranty of his good faith. It cannot be from any desire on the part of the government to obtain the money of the locator. His right of possession does not depend upon any money consideration, but it is a right founded in public policy. It would be clearly against public policy for one to take and hold a mining claim for years, against all others who would be locators, merely that he might speculate upon it, with perhaps no design to develop it. Some guaranty of his good faith is required, as a condition of allowing him such exclusive possession. The labor is not required to be applied in any particular manner, but so that it is unquestionably devoted to such claim. (*McGarrity v. Byington,* 12 Cal. 426.) It must not be so as to raise a question as to its purpose. The exception made in the statute itself invites this construction.

It is conceded that this labor may be in digging, erection of works for mining, in placing machinery, or in buildings on the claim, necessary for its working. In the case at bar the labor of the defendant, under hire of the plaintiffs, at the salary of $500 a year, continuing at that rate to the thirty-first day of July, 1885, was in its character precisely what it had been for the two preceding years. His time was spent upon the property, in caring for it, and in protecting it from deterioration, loss or danger. It involved daily visitations in and over it, and into the works; in fact as the defendant himself testified, "in doing all that could be done with idle property." The exigencies of the mining business frequently require property of this kind to remain idle for a time, but that is not necessarily evidence of intent to abandon it. In this case, at least, the acts of the plaintiffs show that such was not their intention. The improvements to be taken care of and protected were valuable, and consisted of buildings, engine, boiler and machinery, hoisting works, etc.; and, from the defendant's evidence, presumably costing thousands of dollars. They had been constructed and used in the development of this mine. The plaintiffs, with them, had worked the mine for years, and when they needed repairs had repaired them. The hoisting works had to be rebuilt, while the defendant was in charge of the property, at a cost of $2,300. All that was done by the defendant for the plaintiffs in 1885 was clearly in pursuance of their former well-established purpose.

The question as to what shall be understood as "labor upon mines," buildings, etc., has been much discussed, in cases of mining claims; more frequently, perhaps, in cases of liens for labor done. The cases have mostly arisen under claims for miners' or mechanics' liens. While the words of the various statutes are not always identical, there is a general uniformity in the words used in these laws with the statute requiring this annual labor upon mining claims. Practically, where the claim is for work done, the statutes require it to be done on the property. The case of *Rara Avis etc. Min. Co. v. Bouscher,* 9 Colo. 385, 12 Pac. 433, decides what shall constitute labor done "in or upon" mining claims, under the lien law of that state. The law (Colo. Gen. Laws, sec. 1655) reads: "All miners, la-

borers, and others, who work or labor in or upon any mine," etc., "shall have a lien," etc. The court holds that services of a superintendent of mines, in planning or superintending the erection of a mill, and machinery, are work or labor, in or upon the property, within the meaning of the statute. So in Utah (Comp. Laws, sec. 1221) one who shall do work "upon any mine shall be entitled," etc. In a case founded upon this statute (*Mining Co. v. Cullins,* 104 U. S. 176) the court say: "It is somewhat difficult to draw the line between the kind of work and labor which is entitled to a lien and that which is merely professional or supervisory employment, not fairly to be included in those terms. Some courts have held, under laws similar to those of Utah, that an architect who furnishes plans, and superintends the erection of a building, acquires a lien thereon for work and labor"; and cite *Stryker v. Cassidy,* 76 N. Y. 50, 32 Am. Rep. 262, and note; *Insurance Co. v. Rowland,* 26 N. J. Eq. 389, and other cases. In that case the claimant of the lien was an overseer and foreman of a body of miners, and his claim was held good. If it be said that these cases go rather to what shall be deemed work, we answer that is precisely the case at bar. There can be no question that whatever was done was done on the plaintiffs' claim. So in Oregon, under section 1, chapter 32 of the Laws of Oregon, under a like statute, the court in *Falls Co. v. Remick,* 1 Or. 170, give a like construction.

All the authorities cited by the appellant on this point are consistent with the same view. The strongest case cited for the appellant is that of *Du Prat v. James,* 65 Cal. 555, 4 Pac. 562. A party had leased a mill, located about a quarter of a mile from his claim, but whether for the sole purpose of developing his claim does not appear. He made efforts, at first unsuccessful, to get water from a ditch to operate the mill, and traveled to distant places, to see agents of a ditch company, to get water for, as he claimed, the same purpose, and incurred expenses in time and money in doing so. Having succeeded, however, in getting water, "he did not use it, or attempt to crush rock or ore." None of these acts were done on the claim, nor were they necessarily connected with this mine. Indeed, his failure to use the water after he had obtained it raises a

strong presumption that he did not intend to do so; at least, not to develop this mine. The court, properly as we think, held this expenditure was not on the mine, in the sense intended. The case cited (4 Pac. 562) is the same as that last commented upon. The case of *McGarrity v. Byington,* 12 Cal. 426, by implication, at least, favors the view we take upon this subject. It holds that "work done outside of a mining claim with intent to work the claim, to be considered by intendment as work done on the claim, must have direct relation and be in reasonable proximity to it"; clearly implying that, when its purpose is self-evident, it is within the statutes by intendment, if not literally. The personal services of this agent were work and labor. They were performed on the property. They were in aid of the development of this claim. They tended as directly as acts can tend to show the good faith of the plaintiffs, and their purpose not to abandon the mine; at least up to the time they had expended in its preservation (in 1885) labor to the value of $333.

But it is contended that the plaintiffs have not yet paid for this labor. That does not affect the fact that the labor was done by their procurement. The defendant did it for hire, and may recover for the services under his contract. We conclude that on the fourth day of January, 1886, the Ada Elmore lode mining claim was not open to relocation adversely to the plaintiffs. (See *Morgan v. Tillottson,* 73 Cal. 520, 15 Pac. 88.)

But the court below goes further, and holds that the relocation made by the defendant inures to the benefit of the plaintiffs. Under the pleadings such relief can be had. The conclusion is based upon a finding of fact that, at the time of relocation, the defendant sustained a fiduciary relation to the plaintiffs respecting this property. From the evidence it appears that one W. N. Frew, of Pittsburgh, Pennsylvania, where the plaintiffs resided, and still reside, for about eight years next prior to the beginning of this action acted as agent of the plaintiffs, and as such had been known to and dealt with by the defendant. It was through Frew that defendant was in plaintiffs' employ about the premises from 1883 to July 31, 1885. There was much and constant correspondence between

the defendant and Frew; and on the .termination of the defendant's services in caring for the property, July 31, 1885, through Frew defendant was tendered the further service of finding a purchaser for the property at such sum as the plaintiffs would be willing to take, he to receive a percentage of the proceeds for his commission on completion of the sale. The defendant undertook to procure such purchaser, but none had been found up to the beginning of 1886. From this the court held the relations of the defendant with the plaintiffs, with reference to this property, were so far of a fiduciary nature that he would not be permitted to relocate the subject of his trust, for his own benefit; but what he did by way of enlarging the boundaries of the claim was done for the benefit of his principals, subject to their right of election to accept the same. We think the court below was correct in so holding. Numerous authorities are cited by the respondent in support of this decision, but the principle is too well settled to admit of controversy, and we omit citations. The order denying a new trial is sustained, and the judgment is affirmed.

Weir, C. J., and Logan, J., concur.