[No. 1984]

## H. E. CLARK, RESPONDENT, v. M. MITCHELL, G. E. SHANNON, AND A. A. CARION, APPELLANTS.

1. FRAUDS, STATUTE OF—CONTRACT TO RELOCATE MINING CLAIM.

An oral agreement between the plaintiff, a part owner of a mining claim, and one defendant, by which the latter was to perform assessment work on the claim for 1909, and plaintiff was to convey to him an undivided one-fourth of the claim, and defendant was also to relocate another claim in the joint names of plaintiff and defendant in consideration of plaintiff's refraining from performing assessment work on the claim, is not void under Rev. Laws, 1069, providing that no interest in lands shall hereafter be created, granted, or assigned unless by act or operation of law, or by deed of conveyance in writing.

2. MINES AND MINERALS—AGREEMENT TO RELOCATE MINING CLAIM—FAILURE TO PERFORM AGREEMENT.

Where there is an oral agreement between plaintiff, a part owner of a mining claim, and one defendant, by which the latter was to perform the assessment work on the claim for 1909, and plaintiff was to convey to him an undivided one-fourth of the claim, and defendant was also to relocate another claim in the joint names of plaintiff and defendant in consideration of plaintiff's refraining from performing assessment work on the claim, a trust relation is created, and if defendant fails to perform the assessment work, and the first claim reverts to the public, and in relocating the second one he does not include plaintiff as one of the relocators, plaintiff can enforce the trust and recover the share which he would have received had the defendant performed the contract.

3. MINES AND MINERALS—AGREEMENT TO RELOCATE MINING CLAIM—ESTOPPEL TO DENY RIGHTS IN CLAIM.

Where under an agreement by defendant with plaintiff to relocate a mining claim in their joint names, defendant relocates the claim but omits plaintiff's name, defendant, in an action by plaintiff to recover his share of the claim under the agreement, is estopped to deny plaintiff's rights in the claim and cannot question the validity of the location.

APPEAL from the Seventh Judicial District Court, Esmeralda County; *Peter J. Somers*, Judge.

Action by H. E. Clark against M. Mitchell and others. Judgment for plaintiff, and defendants appeal. **Affirmed.** Petition for rehearing. **Denied.**

The facts sufficiently appear in the opinion.

*Thompson, Morehouse & Thompson*, for Appellants:

The contract, as testified to by Clark between himself and Mitchell, whereby the latter agreed to do the annual

labor on the Silver King Fraction claim in consideration
of Clark deeding to him half of his (Clark's) interest, is
a nullity, because within the statute of frauds. (*Arnold*
v. *Goldfield Third Chance M. Co.*, 32 Nev. 447; *Mane* v.
*Howerstag*, 109 Cal. 122; Comp. Laws, 2694; *Wardell* v.
*Williams*, 62 Mich. 50; *Chamberlain* v. *Dow*, 10 Mich. 219;
*Seymour* v. *Cushway*, 100 Wis. 580; *Feeney* v. *Howard*, 79
Cal. 525; *Levy* v. *Brush*, 45 N. Y. 589; *King* v. *Upper*, 106
Pac. 612; *Frits* v. *Mills*, 106 Pac. 725; *De Barski* v. *Paige*,
36 N. Y. 537; *Franklin* v. *Matca M. Co.*, 158 Fed. 941.)

.  The contract to do the work on the Silver King Fraction
was separate and independent and had nothing to do
with the agreement to relocate the Whirlwind No. 4.
Assuming what we do not admit to be the fact, that
Mitchell agreed with Clark that he would relocate the
Whirlwind No. 4 in his and Clark's names, and that they
should be joint owners, half and half, and that in viola-
tion of such agreement Mitchell located the claim in his
own name and that of Carion and Shannon, Clark could
have no interest or action in the relocated claim.   Clark
must have parted with something, paid something, or
done something.

There was no trust relation.  They simply made an
oral contract, and Mitchell violated his oral agreement,
broke his word.   To constitute a trust or confidential
relation, there must have been some such relation, aris-
ing outside of the contract itself, and existing between
the parties.   The contract does not create the relation.
(*Taylor* v. *Kelly*, 37 Pac. 216; *Doyle* v. *Murphy*, 22 Ill. 508;
*Wier* v. *Gard*, 88 Ill. 493; *Hodgson* v. *Fowler*, 43 Pac. 462;
*Duffy* v. *Masterson*, 44 N. Y. 557; 1 Perry on Trusts, sec.
134; *Kroft* v. *Smith*, 117 Pac. 183; *Wheeler* v. *Reynolds*, 66
N. Y. 234; 3 Pom. Eq. Juris. sec. 1056.)

The verbal promise does not create a trust.   The party
claiming the trust expended nothing, therefore he has no
equitable estate. (*Cushing* v. *Houston*, 102 Pac. 29; *Clallam*
v. *Jackson*, 101 Pac. 832; *Howland* v. *Blake*, 97 U. S. 624.)
These cases are not based on the statute of frauds, but
upon the proposition that a mere verbal agreement does

not and cannot create a trust. A trust presupposes some title, legal or equitable, of which the party claiming the trust is deprived.

A person cannot locate in one claim two or more noncontiguous tracts of land. (16 L. D. 186; 13 L. D. 146; 1 Lindley on Mines, 1st ed. sec. 338.)

Finding No. 4 is not sustained by the evidence, for the court therein makes the agreement to do the labor on the Silver King Fraction and the relocation of the Whirlwind No. 4 both one and the same contract.

Finding No. 7 is not supported by the evidence, unless one wholly misconstrues the certificates of location of the Whirlwind No. 4 and of the Silver King Fraction. (Morrison's Mining Rights, 14th ed. p. 65; *Brook* v. *Justice M. Co.*, 58 Fed. 106; *Gibson* v. *Hjul*, 32 Nev. 360.)

Finding No. 8 has no foundation in law or in fact. Shannon and Carion knew nothing of any agreement to relocate the Whirlwind between Mitchell and Clark, and there is no testimony to that effect. On the contrary, the evidence is without contradiction that long prior to the Mitchell-Clark agreement, Shannon, Carion and Mitchell had agreed as to such relocation. There is no law that can hold Shannon and Carion as trustees for Clark. A third person cannot be bound by the act of an agent, when he does not know that there is an agency of any kind. (Am. & Eng. Ency. Law, 1136; Note by Freeman to 88 Am. St. Rep. 782–786.)

To give Clark any right in the premises, we must set aside Mitchell's agreement with Shannon and Carion, and substitute in place of it a subsequent agreement with Clark, of which neither Shannon or Carion had knowledge.

If it be claimed Clark waived his right to locate, we say he gave Mitchell nothing, because Mitchell had the absolute right to locate. To be a consideration, Clark must have had a sole or superior right to Mitchell.

*On Petition for Rehearing:* The court overlooks the undisputed fact in this case that Mitchell had a prior agreement concerning the relocation of the Whirlwind

No. 4 with Shannon and Carion. It is not law that the act of Mitchell would bind any interest of Shannon and Carion.

The district court found as a fact that plaintiff was fully and fairly informed by others. Under these circumstances, considering the uncertain value of the property, plaintiff should have promptly asserted his rights, and not have waited until the defendant had developed the property and demonstrated its value. (*Mackenzie* v. *Coslett*, 28 Nev. 65; *Gamble* v. *Silver Peak*, 34 Nev. 428.)

*Frank J. Hangs*, for Respondent:

The deception and fraud of Mitchell operated to raise a constructive trust in favor of Clark. (*Bowler* v. *Curler*, 21 Nev. 158; *Levy* v. *Ryland*, 32 Nev. 460; *Thompson* v. *Thompson*, 54 S. W. 145.)

This agreement was not within the statute of frauds and that statute cannot be invoked to protect a fraud or aid in a fraud.

There was mutuality of contract between Clark and Mitchell, and Mitchell could have obtained relief had he honestly and faithfully performed his contract and Clark had then tried to evade carrying out his part. (*Musick Oil Co.* v. *Chandler*, 109 Pac. 163.)

The pointing out of the claim and the forbearing and waiving his right to locate the claim for himself is a good and sufficient consideration. (*Ballard* v. *Burton*, 24 Atl. 769; *Bank* v. *Nelson*, 111 Pac. 913; 9 Cyc. 311; *Trice* v. *Comstock*, 121 Fed. 620; *Brooks* v. *Bertners*, 96 N. W. 97; *Sanguinnetti* v. *Rossen*, 107 Pac. 560; *Harris* v. *Harris*, 110 Pac. 1085; *Eisenberg* v. *Goldsmith*, 113 Pac. 1127; Pomeroy, Eq. Juris. 3d ed. secs. 899, 918, 959, 1044, 1050.)

The doctrine we are contending for has been applied in a number of cases relating to mining property. (*Jurst* v. *Patchin*, 35 Fed. 816; *Lockhart* v. *Rollins*, 21 Pac. 413; *Utah M. Co.* v. *Dickert*, 21 Pac. 1002; *Sun Dance M. Co.* v. *Frost*, 64 Pac. 435; *O'Neill* v. *Otero*, 113 Pac. 614; *Murley* v. *Ennis*, 2 Colo. 300; *Moritz* v. *Laville*, 77 Cal. 10; *Argentine M. Co.* v. *Benedict*, 55 Pac. 559.)

The agreement with reference to the work on the Silver King Fraction and the agreement to relocate the Whirlwind No. 4 were but two parts of what is only a single agreement.

Whatever title or interest Carion and Shannon may have in the Helen came from Mitchell, and that title and interest is impressed with the constructive trust in favor of Clark.

By the Court, TALBOT, C. J.:

This is an action brought by the respondent to obtain a judgment declaring him to be the owner and to have possession of an undivided one-half interest in a certain mining claim named the Helen, situate in Hornsilver mining district, Esmeralda County. The court found the following facts substantially in accordance with the allegations of the complaint, and as a conclusion of law therefrom determined the plaintiff to be entitled to judgment as prayed for:

" (1) That at all times hereinafter mentioned and until midnight of the 31st of December, 1909, J. M. Russell, Howard Russell, and Elmer J. Chute were the owners of the Whirlwind No. 4 lode mining claim, situate in Hornsilver mining district, Esmeralda County, Nevada.

" (2) That at the time of the making of the contract hereinafter mentioned, plaintiff Clark and Mr. E. L. Stingley were the owners of the Silver King Fraction lode mining claim, situate in the above-mentioned district, county and state, and lying adjacent to and contiguous with said Whirlwind No. 4 lode mining claim.

" (3) That at the time of the making of said contract plaintiff had the right, by virtue of an agreement with said Elmer J. Chute, to enter upon said Whirlwind No. 4 lode mining claim in the place of said Chute and perform the assessment work thereon for the year 1909, and thereby acquire the interest of said Chute in said claim.

" (4) That between the 23d and 29th days of December, 1909, inclusive, plaintiff and defendant Mitchell entered into a contract, not in writing, whereby defendant

Mitchell agreed to perform the assessment work upon the said Silver King Fraction for the year 1909, in consideration whereof plaintiff agreed to convey to him, said Mitchell, the undivided one-fourth of said claim; and whereby defendant Mitchell agreed to relocate said Whirlwind No. 4 in the joint names of plaintiff and said Mitchell, each to have one-half thereof, in consideration whereof plaintiff agreed to refrain from performing the assessment work for the year 1909 upon said Whirlwind No. 4, and permit the same to revert to the public domain so as to make the relocation thereof as aforesaid possible.

" (5) That the terms and conditions of said contract were fully kept and performed on plaintiff's part, but defendant Mitchell, contrary to the terms of said contract on his part to be kept and performed, and with the fraudulent purpose of dispossessing the plaintiff of said ground, wilfully failed to perform the assessment work upon said Silver King Fraction for the year 1909, and because of such failure the same reverted to the public domain and was lost to plaintiff and said Mitchell in relocating said Whirlwind No. 4 as the Helen lode mining claim, as by the pleadings established, omitted to include plaintiff as one of the relocators thereof, and in violation of the faith and confidence reposed in him by plaintiff, and with the fraudulent purpose aforesaid, relocated said premises in the sole names of himself and defendants Shannon and Carion.

" (6) That the plaintiff wholly relied upon defendant Mitchell's promise to perform said assessment work upon said Silver King Fraction lode mining claim and to relocate said Whirlwind No. 4 as aforesaid, and, because of his faith in and reliance upon said Mitchell to perform his part of said contract, refrained from performing said assessment work and making said relocation.

" (7) That the said Helen lode mining claim laps over, upon, and includes part of the territory comprising the said Silver King Fraction lode mining claim, and the area so overlapping said Silver King Fraction contains the principal discovery of said Helen lode mining claim, and

from it defendants have extracted large quantities of mineral-bearing rock and quartz of commercial value.

" (8) That defendants Shannon and Carion acquired their respective interests in said Helen lode mining claim only by virtue of the relocation made by the defendant Mitchell, as aforesaid in violation of the contract with and trust and confidence reposed in him by plaintiff Clark as above set forth. That said defendants did not purchase said interests for value or otherwise or acquire the same in good faith or without notice of plaintiff's rights in the premises, but took the same with full notice of all of the foregoing facts."

This case was argued and submitted to this court, together with Case No. 1987—H. E. Clark and E. L. Stingley against the same defendants (35 Nev. 464, *post*), appellants herein. The two cases are so related that they will be considered together. The latter action was brought by Clark and Stingley to recover judgment for the possession of an undivided three-fourths interest of a certain described piece of ground alleged to be a part of the Silver King lode mining claim, included between the exterior boundaries of the said Helen lode mining claim involved in Case No. 1984, *supra*. In the latter case the findings and decision of the court were as follows:

"That said location of the Silver King Fraction lode mining claim was made for the purpose of claiming a certain piece of vacant ground lying between the Deyling claim, near the westerly end thereof, and the Lime Point No. 3 claim, near its easterly end line; also extending northerly between the end lines of the Deyling claim and the Lime Point No. 1 claim, to a point about 350 or 375 feet northerly from the southwest corner of the Deyling claim and the Lime Point claim No. 1, to a point where said end lines intersect and cross each other. The plaintiffs also, by virtue of said location, claim the piece of ground described as adjoining the west end of what was known as the Whirlwind No. 4 lode mining claim, lying about 250 feet northerly from the northerly point of the

fractions above described. The location monument of the said Silver King Fraction was placed upon the vacant ground sought to be located, about 75 feet north of the southwest corners of the Deyling and Lime Point No. 1 claims, and the discovery work was done about 150 feet northerly from the location monument.

"That on the 23d day of December, 1909, the plaintiff H. E. Clark made an agreement with the defendant M. Mitchell to perform the annual labor upon the Silver King Fraction lode mining claim, for an undivided one-fourth interest in the same. In compliance with said contract, the defendant Mitchell did, or caused to be done, some work upon the ground claimed by the plaintiff as the Silver King Fraction. The evidence fails to show, however, that a sufficient amount of work was done by the defendant Mitchell to meet the requirements of the law relative to the annual labor upon mining claims.

"That the defendant A. A. Carion had knowledge of the agreement which had been made between the plaintiff Clark and the defendant Mitchell; but there is no evidence which, in my judgment, was sufficient to show that the defendant G. N. Shannon had any knowledge of the agreement made between the plaintiff, Clark, and the defendant Mitchell.

"That on the 1st day of January, 1910, the defendants Mitchell, Shannon, and Carion located the Helen lode mining claim, taking in the ground which had, prior to that time, been claimed as the Whirlwind No. 4 lode mining claim, and also including the ground first above described, and which was claimed by the plaintiff to be a part and portion of the Silver King Fraction mining claim.

"It is claimed by the plaintiffs that the defendants, in view of the agreement above mentioned, were occupying a fiduciary relation to and with the plaintiffs, and that they could not occupy and claim any portion of the ground claimed by the plaintiffs as the Silver King Fraction, to the exclusion of the plaintiffs, and to deprive them of their rights and interest in said ground as a portion of the Silver King Fraction mining claim.

"As conclusions of law, I find that a fiduciary relation did exist between the plaintiffs and the defendants Mitchell and Carion, and that the plaintiffs should be entitled to recover an undivided three-fourths interest in any property which the defendant located, as against the defendants Mitchell and Carion, provided that any portion of the ground so located by them as the Helen claim shall be found to be a portion of the Silver King Fraction claim, lawfully claimed and held by the plaintiffs herein. The evidence relative to the amount of ground alleged to have been vacant at the westerly end line of the Whirlwind No. 4 is very conflicting, but, with the views entertained by the court as to the law of this case, it will not be necessary to reconcile the conflicting evidence, nor to pass upon the amount of ground which was included in that fraction. From the facts above found, the conclusion of the court is that the plaintiffs acquired no rights to that vacant fraction of ground lying west of the Whirlwind No. 4 lode mining claim, by virtue of the location of the Silver King Fraction. This last-mentioned fraction was not contiguous to the fraction upon which the location was made and the discovery work performed, and was situated at least 250 feet away from the nearest point of the located fraction, and it was an attempt on the part of the plaintiffs to include in their location two several and distinct pieces of ground, separated from each other by a distance of at least 250 feet covered by other and prior located claims.

"It does not appear that any location work was done upon the premises in controversy. No location notice and no monuments were erected anywhere in the vicinity of this fraction to indicate that any claim whatever was made for that fraction. In fact, it appears from the evidence that all of the boundary monuments of the so-called Silver King Fraction lode were placed upon prior and existing mining claims and at a considerable distance from the fractions which were open to location, and were sought to be claimed as the Silver King Fraction. Mr. Lindley, in discussing this proposition, uses the following language: 'If the lode of the junior

locator on his course reaches or crosses the properly established surface boundaries of a prior location, the right to pursue the vein beyond that point cannot be asserted. The end line of the junior must either conform to the cross boundary of the senior, or he must, at the expense of abandoning a portion of the lode, so construct his end lines that no part of them shall be on territory previously appropriated.' No case has been tried by me in which the same questions have been presented as those that are involved in this case, and no authorities have been cited upon the points involved, but it is unquestionably the law that no two separate mining claims can be held by one location. It would seem equally true and logical that no two separate fractions of ground could be held by one location.

"If my conclusions are correct in this respect it follows that the defendants in locating the Helen lode mining claim did not in any manner encroach upon the legal rights of the plaintiffs. The complaint of the plaintiffs should be dismissed, and the defendants have judgment for their costs herein expended, and it is ordered that judgment be entered accordingly."

Case No. 1984 was tried before Judge Somers, while Case No. 1987 was tried by Judge Stevens.

On behalf of the defendants it is contended that the oral agreement made between Clark and Mitchell was void under the statute of frauds; that the Silver King Fraction, being in two pieces, which were divided by other mining locations, only the piece having the location point can be held, and that the other piece, in which is included the valuable ground in controversy on the Whirlwind No. 4, relocated as the Helen, is not a valid part of the Silver King Fraction.

[1] We are unable to agree with the contention that the contract between Clark and Mitchell was void because not in writing, under section 1069, Revised Laws, which provides: "No estate, or interest in lands, other than for leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner

relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance, in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized in writing." This statute was intended to prevent, and was never designed to encourage, fraud. The agreement, supplemented by the conduct of the parties, makes the case very different from one involving only the right to recover on an unwritten agreement for the sale of real estate, for here a fiduciary relation was created by reason of which Clark trusted and delegated Mitchell to protect Clark's interests. If it had been merely an oral agreement to sell or exchange mining property or other real estate, and Mitchell had declined to perform, the contract would not be enforceable. In such a case Clark would not have lost, nor Mitchell acquired, the title. The evidence and findings indicate that, if the agreement had not been made, Clark would have done the annual assessment work to prevent forfeiture of the Silver King Fraction and would have gone out himself and relocated the Whirlwind No. 4.

[2] In answer to the contention that Clark paid or gave nothing as a consideration, it is sufficient to say that by the oral agreement of Mitchell to do the work on the Silver King Fraction for a one-quarter interest, and to relocate the Whirlwind No. 4 for himself and Clark, and by his starting the work and representing that he was doing it, Clark was prevented from doing or having the work done and from going out to make the relocation himself, and unless protected by the court lost the ground by reason of Mitchell's failure to do the work and make the relocation for himself and Clark. Under these circumstances, it would be inequitable to allow Mitchell to take advantage of his own wrong and retain for himself and others, and cause Clark to lose, the title which Clark had or would have acquired and retained if Mitchell had not made and broken the agreement to

protect Clark's interests, and lulled Clark into believing that the work would be and was being done. There was a trust relation, and quite as much obligation and reliance upon Mitchell for the doing of the annual work and the making of the relocation as if he had been employed as an ordinary agent or had been a coowner in the Silver King Fraction. Under the conditions shown, by operation of law the interest in the locations agreed to be acquired and held for Clark belong to him in trust, and he is as much entitled to them as he would have been if Mitchell had done the assessment work and made the relocation with Clark's name.

In the case of *Hunt* v. *Patchin*, 35 Fed. 816, there were three owners as tenants in common of three mining claims, and by failure to do the annual work there was a forfeiture. The relocation by one of the owners was adjudged to be in trust for the others. In the course of the opinion, Judge Sawyer said: "I am entirely satisfied that these claims were relocated under the new names at the time for the benefit of all the original owners, or else they were located in bad faith by defendant, after giving his associates, by his conduct, the right to believe, and when they did believe, that the location was for the benefit of all. Under this state of facts, I am clearly of the opinion that a trust arises in favor of complainant under the operation of law. * * * It was his duty not to permit a forfeiture for the purpose of relocating and acquiring the whole for himself without their knowledge and consent. By conferring with them and arranging to forfeit, and relocate for the benefit of all, he misled them, and violated the confidence reposed in him, if he relocated clandestinely for the benefit of himself alone. By his act and this breach of faith he threw his associates off their guard and prevented them from taking other means to protect their interests. * * * In *Lakin* v. *Mining Co.*, 11 Sawy. 238, 25 Fed. 337, a case similar, but not exactly like this, it was held that 'where one party, wrongfully, obtains the legal title to land, which in equity and good conscience belongs to another, whether

he acts in good faith, or otherwise, he will be charged in equity as a constructive trustee of the equitable owner.' Can it be doubted, on the facts as they appear in the pleadings and evidence, that defendant got whatever title he has to the interest of complainant and James in the mines in question through a breach of faith and confidence? It seems to me not. He must therefore be charged as trustee of their interests."

In the case of *Royston* v. *Miller*, 76 Fed. 50, involving the Kingston mines in Lander County, Judge Hawley held that a coowner who undertakes to do the work necessary to hold mining claims cannot acquire any interest in them as against his coowners because of the failure to do such work.

In *Reagan* v. *McKibben*, 11 S. D. 270, 76 N. W. 943, it was held that an agreement to locate a mining claim for the benefit of others is valid although not in writing.

In *Book* v. *Justice Mining Co.*, 58 Fed. 108, the locating of claims at Virginia City by individuals in their own names and the doing of the annual assessment work thereon for a corporation was held to be for the benefit of the corporation.

In the case of *Trice* v. *Comstock*, before the Circuit Court of Appeals, 121 Fed. 622, 57 C. C. A. 648, 61 L. R. A. 176, it is said in the opinion: "For reasons of public policy, founded in a profound knowledge of human intellect and of the motives that inspire the actions of men, the law peremptorily forbids every one who, in a fiduciary relation, has acquired information concerning or interest in the business or property of his correlate, from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation. If one ignores or violates this prohibition, the law charges the interest or the property which he acquires in this way with a trust for the benefit of the other party to the relation, at the option of the latter, while it denies to the former all commission or compensation for his services. * * * And, within the prohibition of this rule of law, every relation in which the duty of fidelity to each other is imposed

upon the parties by established rules of law is a relation
of trust and confidence. The relation of trustee and
*cestui que trust*, principal and agent, client and attorney,
employer and an employee, who through the employment
gains either an interest in or a knowledge of the prop-
erty or business of his master, are striking and familiar
illustrations of the relation. From the agreement which
underlies, and conditions these fiduciary relations, the
law both implies a contract and imposes a duty that the
servant shall be faithful to his master, the attorney to his
client, the agent to his principal, the trustee to his *cestui
que trust*, that each shall work and act with an eye single
to the interest of his correlate, and that no one of them
shall use the interest or knowledge which he acquires
through the relation so as to defeat or hinder the other
party to it in accomplishing any of the purposes for which
it was created. (2 Sugden on Vendors, 8th Am. ed. 406–
409; Mechem on Agency, pp. 455, 456; *Tisdale* v. *Tisdale*,
2 Sneed, 596, 608, 64 Am. Dec. 775; *Ringo* v. *Binns*, 10
Pet. 269, 280, 9 L. Ed. 420; *McKinley* v. *Williams*, 74 Fed.
94, 95, 20 C. C. A. 312, 313; *Lamb* v. *Evans*, 1 Chan. Div.
218, 226, 236; *Connecticut Mutual Life Insurance Co.* v.
*Smith*, 117 Mo. 261, 295, 22 S. W. 623, 38 Am. St. Rep. 656;
*Van Epps* v. *Van Epps*, 9 Paige, 237, 241; 1 Lewin on
Trusts, 246, 180; *Davis* v. *Hamlin*, 108 Ill. 39, 49, 48 Am.
Rep. 541; *Winn* v. *Dillon*, 27 Miss. 494, 497; *People* v.
*Township Board*, 11 Mich. 222, 225; *Grumley* v. *Webb*, 44
Mo. 444, 454, 10 Am. Dec. 304; *Lockhart* v. *Rollins*, 2
Idaho, 503, 511, 21 Pac. 413; *Eoff* v. *Irvine*, 108 Mo. 378,
383, 18 S. W. 907, 32 Am. St. Rep. 609; *Robb* v. *Green*, 2
Q. B. 315, 317, 318, 319, 320; *Louis* v. *Smellie*, 73 Law
Times, 226, 228; *Gardner* v. *Ogden*, 22 N. Y. 327, 343, 350,
78 Am. Dec. 192.)"

[3] Extensive consideration is given in the briefs as
to whether under conflicting or later decisions two non-
contiguous pieces of ground, separated by prior claims,
may be held under one location, and as to boundaries,
and whether the monuments or distances control. As

under the agreement Mitchell was the trusted agent or representative of Clark, for the doing of the work on the Silver King Fraction and for relocating the Whirlwind No. 4, and Mitchell was in duty bound to protect Clark to the extent of the interests agreed upon in the Silver King Fraction and in the relocation of the Whirlwind No. 4, Mitchell as a tenant in common is estopped from denying the rights of Clark in the claims, as recognized by their agreement. Whether the relocation made by Mitchell contains more or less ground, and whether the Silver King Fraction may hold a piece of land segregated from its location point, are not questions properly in issue in these cases. These parties being in equity tenants in common, whatever rights Mitchell acquired by location or by possession, or otherwise, in the ground, would inure to the benefit of Clark to the extent of the undivided interest to which he is entitled. Whether one or more of the locations are valid or subsequent to others is not material. The undivided interests of Clark and Mitchell stand on a common basis, differently than if a stranger were seeking to recover the land on the claim that their location was void and that he had made the first valid one.

In *Trice* v. *Comstock, supra,* the court said: "It is here contended that no trust arose because Trice and Beamer had no interest in or control over the lands. But no interest or control of the property to which the agency relates is essential to the raising of the trust. The fiduciary relation and a breach of the duty it imposes are sufficient in themselves. (*Winn* v. *Dillon,* 27 Mass. 494, 497; *People* v. *Township Board,* 11 Mich. 222, 225; *Grumley* v. *Webb,* 44 Mo. 444, 454, 10 Am. Dec. 304; *Lockhart* v. *Rollins,* 2 Idaho, 503, 511, 21 Pac. 413.) If one employs and pays an agent to investigate the title or the character of land for the purpose of purchasing it, and the agent uses the knowledge he acquires in this way to forestall his principal and obtain a title to the property for himself, it is no answer to the suit of the former to

recover the land from his agent that the employer never had any title or interest in it, or that he was not injured by the action of the agent."

In this case, of Clark alone against the defendants, the judgment will be affirmed.

A different order will be made in the other case.

NORCROSS, J.: I concur.

## ON PETITION FOR REHEARING

By the Court, TALBOT, C. J.:

Under the cases considered in our decision in *H. E. Clark and E. L. Stingley* v. *Mitchell, et al.* (see Case No. 1987, page 464 of this volume, *post*), and under *O'Neill* v. *Otero*, 15 N. M. 707, 113 Pac. 614, and cases cited there and in the brief, we adhere to the conclusion that Clark is entitled to relief under the agreement of Mitchell to relocate the Whirlwind No. 4 and to put Clark in such relocation for an undivided half interest.

However, we notice more particularly one point raised in the petition for rehearing. It is said therein: "Now, it may be true that the act of Mitchell with Mr. Clark would be binding on Mitchell as to any interest that Mitchell might acquire in the property; but we are asserting with great earnestness that it is not law that the act of Mitchell would bind any interest of Shannon and Carion, because the contract made by Clark with Mitchell would be a fraud and a breach of faith against Shannon and Carion, and it does not matter that Shannon and Carion may have known of such an agreement between Clark and Mitchell, because they had a right to presume that Mr. Mitchell would carry out his agreement with them, and he did carry out that agreement, and relocated the mining claim Whirlwind No. 4 according to his previous and prior agreement."

There is evidence that Mitchell did agree with Carion to relocate the Whirlwind No. 4 for the benefit of Mitchell and Carion, and that Shannon was not aware that he was to be included in the relocation until after it had been made and his name added to the notice. Under these

circumstances, it may be answered that this is an action by Clark to recover under an agreement made with Mitchell, that no issue is presented as to the interest which Carion might be entitled to recover under any agreement made by him with Mitchell, and that Mitchell could not avoid responsibility for his agreement with Clark by making the relocation in the name of Mitchell and Shannon or others. If by using other names in making the relocation Mitchell could avoid liability on his agreement with Clark, or reduce the share to which Clark was entitled, he could deprive Clark of all but an infinitesimal fraction by adding numerous names to the certificate of location, notwithstanding his agreement to allow Clark one-half of the relocation.

As counsel contend with so much assurance, we state that under the circumstances shown equity will not allow a party to avoid responsibility for his agreement by giving away the property, or by taking it in his own name or in the name of others.   If, in addition to making the agreement with Clark, and also an agreement with Carion to relocate each for one-half or the whole of the Whirlwind No. 4, Mitchell had also made an agreement to relocate Carion or others for one-half or the whole of the claim, so that different parties would be entitled under the different agreements to more than the whole interest in the property, we can see how equity might of necessity make some division of the property which would award each of the parties entitled a less proportion than that provided for in his agreement, but the largest proportion possible upon a division of the whole property.

The judgment of the district court awarding Clark an undivided one-half interest in the Helen location will stand, subject to the judgment in the other case, of H. E. Clark and E. L. Stingley against these defendants, or, with the same result, the judgment may be modified to cover all that part of the Helen claim excepting the ground which belonged to the Silver King Fraction at the end of the year 1909.   The interest in the ground which so belonged to the Silver King Fraction must be

controlled by the judgment in the other case, to which Stingley is a party, as we have indicated in the opinion on petition for rehearing this day filed in that case.

The petition for rehearing is denied.

NORCROSS, J.: I concur.

MCCARRAN, J., having become a member of the court after the argument and submission of the case, did not participate in the foregoing opinions.